STATE of Missouri ex rel. SAFECO NA-
TIONAL INSURANCE COMPANY
OF AMERICA, Relator,

v.

The Honorable Lucy C. RAUCH, Division
3, Circuit Court of the County of St.
Charles, State of Missouri, Respondent.

No. 62891.

Missouri Court of Appeals,
Eastern District,
Writ Division Four.

March 9, 1993.

Gary E. Snodgrass, Rabbitt, Pitzer & Snodgrass, St. Louis, for relator.

Rex M. Burlison, Burlison and Farrell, O'Fallon, for respondent.

SIMON, Judge.

Relator, Safeco National Insurance Company of America, seeks a writ of prohibition to prohibit respondent, Judge Lucy C. Rauch of the Circuit Court of St. Charles County, from enforcing a subpoena to appear and produce documents at a deposition. The subpoena's purpose is to discover the contents of relator's investigation file on the claim by Joe D. and Laura Brines (plaintiffs) under the uninsured motorist provision of their automobile insurance policy with relator.

Following a collision with a phantom automobile in August of 1991, plaintiffs Joe D. Brines and his wife Laura, filed a claim with relator pursuant to the uninsured motorist provision of their automobile insurance policy. Plaintiffs and relator were proceeding to investigate to resolve the claim when, on January 20, 1992, relator sent a letter to plaintiffs' attorney advising that it had learned through plaintiffs' attorney and investigators, and Sergeant Hoelker of the Missouri Highway Patrol that the phantom vehicle had been identified and was insured. Pursuant to this information, relator informed that payment of plaintiffs' claim under the uninsured or underinsured motorist provision of the policy would not be considered but that relator would continue to investigate.

Plaintiffs then filed their petition against relator in three counts seeking damages for Joe D. Brines' injuries (Count I), Laura Brines' lost society, companionship and consortium (Count II), and vexatious refusal to pay the claim (Count III) which was later dismissed pursuant to relator's motion. In September of 1992, plaintiffs served a subpoena on the keeper of records of relator to bring to a deposition the "complete investigative file, including all documents, reports and items in writing accumulated by Safeco …" on plaintiffs' claim. Relator's motion to quash the subpoena was denied by respondent, and plaintiffs were granted access to the contents of relator's claim investigation file up to January 20, 1992, the date on which relator informed plaintiffs that their claim under the policy would not be considered. In this court, relator requested a preliminary writ of prohibition to prevent respondent from allowing plaintiffs access to the claim investigation file. On October 27, 1992, we issued a preliminary writ prohibiting all action in the premises.

Relator contends that the documents which plaintiffs seek to discover are protected by the work product doctrine since they were prepared in anticipation of litigation, and that plaintiffs made no showing of substantial need of these documents in the preparation of their case and an inability to obtain their substantial equivalent without undue hardship through other means. Relator also contends that without Count III, vexatious refusal to pay, the contents of the investigation file are irrelevant and immaterial. Respondent argues that the contents of the file are not work product because they were not gathered in anticipation of litigation, and that work product privilege protection has been waived by relator's pleading of an affirmative defense alleging plaintiffs' failure to assist and cooperate which brings in issue the contents of the investigative file.

General provisions governing discovery are contained in Supreme Court Rule 56; pertinent provisions thereof are as follows:

**56.01. General Provisions Governing Discovery**

\*　　\*　　\*　　\*　　\*　　\*

(b) Scope of Discovery. Unless otherwise limited by order of the Court in accordance with these Rules, the scope of discovery is as follows:

(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

\*　　\*　　\*　　\*　　\*　　\*

(3) Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this Rule 56.01, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this Rule 56.01 and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative, including his attorney, consultant, surety, indemnitor, insurer, or agent, only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

\*　　\*　　\*　　\*　　\*　　\*

Relator claims that the contents of the file are work product and therefore not discoverable except upon plaintiffs making the requisite showing under Rule 56.-01(b)(3). Respondent contends that the contents of the file are not work product because they were not gathered in anticipation of litigation, as evidenced by the nature of the correspondence from Safeco up to January 20, 1992 which shows that Safeco was handling the uninsured motorist claim following the ordinary course of business, and not investigating it as a liability type claim. Further, that it was not until January 20, 1992 that relator's position changed and the prospect of litigation developed. In denying the motion to quash, respondent's ruling was apparently based on the premise that materials gathered before the date of the denial of plaintiffs' claim would not have been in anticipation of litigation, and therefore not work product.

■ The test of when a document has been prepared in anticipation of litigation or for trial is not whether an action has been commenced, but whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. *State ex rel. Day v. Patterson*, 773 S.W.2d 224, 228[7] (Mo.App.1989).

■ Generally, insurer and insured are in an adversary relationship whenever there is any claim by an insured for loss under any insurance policy. *Shafer v. Auto. Club Inter–Ins. Exchange*, 778 S.W.2d 395, 398 (Mo.App.1989). The uninsured motorist provision of an automobile insurance policy places the insured in the posture of a member of the public seeking recovery for an injury resulting from the negligence of a motorist whose liability is insured by relator. *Craig v. Iowa Kemper Mutual Insurance Co.*, 565 S.W.2d 716, 723–24[7] (Mo.App.1978). The provision creates no special relationship between the insured and the insurer but only the mere contract to pay damages up to the policy limits upon determination that the uninsured motorist is legally liable for the inju-

ry to the insured. *Id.*, at 724. No independent duty of good faith and trust accrues to the insured under this coverage. *Id.* The very contrary results: under the uninsured motorist provision the insured and the insurer become adversaries who deal with wariness, not principal and agent who deal with trust. *Id. See also, State ex rel. State Farm Mutual Insurance Company v. Keet*, 601 S.W.2d 669, 671[2, 3] (Mo.App. 1980).

■ Here, the claim file sought under the subpoena is not before us. However, based on the adversarial relationship of the parties, as well as the nature of an uninsured motorist claim based on a collision with a phantom vehicle, it is likely that relator would have investigated the collision and plaintiffs' claim under the policy with an eye toward discovering the identity of the phantom vehicle and contesting, if necessary, plaintiffs' claim. The fact that relator and plaintiffs' attorneys were cooperating and communicating amicably toward an expedient and agreeable resolution of the claim does not in any way alter the adversarial nature of the parties' positions.

Since plaintiffs seek relator's entire investigation file on their claim and have not particularized their request to specific items, and we do not know what is contained in the file, it is possible that plaintiffs' discovery request may encompass material that is wholly undiscoverable under the attorney-client privilege. Since we have found that relator's claim under the uninsured motorist provision of the policy creates an adversarial environment, plaintiffs, to discover work product material, would be required to make the requisite showing of substantial need and an inability without undue hardship to obtain the substantial equivalent of the materials by other means. Rule 56.01(b)(3).

Respondent's reliance on *State ex rel. J.E. Dunn Const. v. Sprinkle*, 650 S.W.2d 707 (Mo.App.1983) is misplaced. In *Dunn*, the City of Kansas City, owner of Kemper Arena, filed a claim against its insurer, Great American Insurance Co., under a policy for damages when the arena collapsed. Great American compiled an investigation file while denying liability on the claim, but eventually settled with the City. The City

agreed to sue third persons who might be liable on the claim, the suit to be "at the sole direction and control of Great American." *Id.*, at 708. In the subsequent suit between the City and Dunn, Dunn sought to discover the investigation file of Great American. The court allowed discovery of the investigation file and, relying principally upon *Bunting v. Gainesville Machine Co.*, 53 F.R.D. 594 (D.Del.1971), held that the "qualified work product immunity would have applied in litigation between the City and Great American, but it does not go the additional remove to apply between the City and Dunn." *Dunn*, at 711[3]. Notably, in *Dunn* the party from whom discovery was sought was not a party to the suit, and the materials sought to be discovered had not been compiled in anticipation of the litigation in question. Thus, *Dunn* presents a situation different from the case here.

■ Respondent argues also that even if the materials in question are work product, relator has waived the privilege by relying on the affirmative defense of plaintiffs' failure to comply with the assistance and cooperation conditions of the policy. Respondent contends relator's allegation that plaintiffs have failed to take necessary actions and failed to join responsible persons as party defendants is reliance upon any work product document that is contained in the file as a basis for a claim or defense, and thus acts as a waiver of the work product privilege. Essentially, respondent contends that relator's affirmative defense injects an issue requiring reliance upon work product.

Respondent relies on *State ex rel. Mueller v. Dixon*, 456 S.W.2d 594 (Mo.App. 1970), where the information sought in discovery had been divulged through voluntary disclosures of fact, and the objection to the discovery request based on work product immunity waived. *Id.*, at 597. Here, respondent does not contend that the information sought has already been revealed. Thus, the ruling in *Dixon* is inapposite.

Respondent also relies on two federal cases, *Handgards, Inc. v. Johnson & John-*

*son,* 413 F.Supp. 926 (N.D.Cal.1976), applying Rule 26(b)(3) of the Federal Rules of Civil Procedure which is very similar to our Rule 56.01(b)(3), and *Chavis v. State of North Carolina,* 637 F.2d 213 (4th Cir. 1980). In *Handgards,* plaintiff claimed in antitrust litigation that defendant had instituted a series of patent infringement suits against it in bad faith as part of a conspiracy to restrain trade and monopolize industry. The defendants intended to call as witnesses the attorneys primarily responsible for prosecuting the prior patent infringement suits to testify as to legal advice they rendered to the defendants in connection with the prosecution of the prior actions. The court held that documents relating to the issue of the defendants' good faith in pursuing the prior litigation were discoverable, work product privilege notwithstanding, because the plaintiffs had made the requisite showings of substantial need and undue hardship as required under the applicable Federal Rule, *Id.,* at 931[8, 9], and because the subpoenas were drafted in a sufficiently narrow and precise fashion to require production of only those documents relevant to the issues in question. *Id.,* at 933. Here, no showing of substantial need and undue hardship has been made, nor has the subpoena in question been drafted in such a fashion as to require discovery of only those documents relevant to the issue of plaintiffs' noncooperation.

In *Chavis,* a crucial witness for the state in a criminal prosecution defended his credibility by explaining inconsistencies between his original statement and his testimony in court by claiming that corrections to his original statement had been made and thus were consistent with his testimony in court. In dismissing the contention of North Carolina that because the corrections made to the witness' original statement were in the handwriting of the prosecutor they were work product, the court held that the work product privilege was waived when the witness, in defending his credibility, referred to and relied upon the evidence sought to be claimed as work product. *Id.,* at 224. Here, if, as respondent contends, relator's reliance upon the noncooperation defense acts as a waiver of the work product privilege as to documents

relevant to that defense, the subpoena encompasses far more than would be allowed under this particular waiver because the subpoena is not specifically directed, as in *Chavis,* to materials relevant to that particular issue. *Id.,* at 218.

In short, the cases cited by respondent are distinguishable. The materials subpoenaed may well include those compiled in anticipation of litigation and protected by the work product privilege or perhaps the attorney-client privilege. Thus, the subpoena cannot be enforced in its present form. Further, specific materials sought and deemed work product would require a showing of substantial need and undue hardship under Rule 56.01(b)(3).

▮ Relator's contention that dismissal of plaintiffs' vexatious refusal to pay claim makes the materials in the investigation file irrelevant is without foundation. As stated previously, we do not know what is in the file, and therefore cannot decide what documents would be relevant to the issues of the litigation. Since the propriety of discovery is a matter of discretion for the trial court, *State ex rel. Anheuser v. Nolan,* 692 S.W.2d 325, 328[5, 6] (Mo.App. 1985), the relevance of any particular discoverable materials sought is a determination to be made initially by the trial court.

The preliminary writ is made permanent to prohibit enforcement of the subpoena, but is dissolved in all other respects so that the matter may proceed toward disposition in accordance with this opinion.

KAROHL, C.J., and SMITH P.J., concur.