## Schoffstall v. Nationwide Insurance Co.

458

C.P. of York County, no. 94-SU-04190-01.

*James D. Greenberg* and *John D. Briggs,* for plaintiff.
*Lee E. Ullman,* for defendant.

HORN, *J.,* October 27, 1998—The defendant, Nationwide Insurance Company, has filed a motion to quash the subpoena issued to Ellen B. Gewen, Esquire. We will deny this motion.

This is a bad faith claim for punitive damages under 42 Pa.C.S. §8371. The bad faith claim arises out of prior litigation involving the plaintiff, Tony Schoffstall; namely, *Hannigan v. Schoffstall* (Adams County C.C.P. no. 93-S-633). The plaintiff was involved in a motor vehicle accident with Barbara Hannigan on August 2, 1991. At the time of the accident, Mr. Schoffstall was insured under a liability policy issued by Nationwide. The policy provided $100,000 of liability coverage per claimant.

Hannigan sued Mr. Schoffstall, and after trial, a jury returned a verdict for Hannigan in the amount of $119,522.79. Nationwide paid the entire amount, including the $19,522.79 excess verdict. Mr. Schoffstall later filed a complaint against Nationwide, seeking punitive damages for bad faith under 42 Pa.C.S. §8371. In his complaint, Schoffstall alleges that Nationwide acted in bad faith when, among other things, it:

"(a) Proceeded to trial in suit, knowing that there was no possibility of a defense verdict, and that there was a substantial risk of an excess verdict being entered against plaintiff, Tony Schoffstall;

"(b) Refused to settle suit within the policy limits when the defendant had the opportunity to do so, in an attempt to save defendant money off of its policy limits, despite the risk of an excess verdict, thereby intentionally placing defendant's own financial interest above those of its insured plaintiff, Tony Schoffstall;

"(c) Refused to advise plaintiff, Tony Schoffstall, that a jury trial in suit posed a risk of excess verdict to the detriment of plaintiff's financial well-being;

"(d) Refused to afford plaintiff, Tony Schoffstall, an opportunity to consult independent counsel prior to the trial of suit;

"(e) Understaffed and over utilized defendant's in-house counsel in a concerted effort to save defendant money, to the detriment of plaintiff, Tony Schoffstall's, legal and financial well-being; such deliberate practices constituting the intentional elevation of the defendant's financial interests above those financial interests of plaintiff, Tony Schoffstall."

During the discovery phase of this case, the plaintiff deposed several employees of Nationwide. Plaintiff's counsel deposed the claims adjusters involved in the *Hannigan v. Schoffstall* case, as well as the claims manager and Mr. Schoffstall's trial counsel. In addition, the Honorable John C. Uhler, president judge, ordered Nationwide to produce for deposition David Cole, a regional claims manager for Nationwide. Judge Uhler limited the inquiry to Cole's financial considerations, practices, procedures, and policies in utilizing or over utilizing in-house counsel. Judge Uhler later directed that Nationwide produce for deposition John Flynn, former director of trial division for Nationwide. Plaintiff's counsel also deposed David Bakken, director of trial division, to testify concerning Nationwide's policies, procedures and practices in utilizing trial division.

Recently, the plaintiff served a deposition subpoena on Ellen B. Gewen, Esquire. Ms. Gewen, until July 25, 1998, worked for Nationwide as a claims legal counsel and had direct responsibility for overseeing the defense of the present bad faith lawsuit on behalf of Nationwide. Ms. Gewen apparently was not involved

in the *Hannigan v. Schoffstall* case. Nationwide has filed the present motion to quash the subpoena served on Ms. Gewen, contending that any testimony from Gewen is irrelevant to the issues involved in the present case and is protected by the attorney-client privilege and the work product doctrine. The plaintiff filed a brief opposing the motion.

## DISCUSSION

The law governing the attorney-client privilege is found at 42 Pa.C.S. §5928 and provides:

"In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client."

In order to invoke the attorney-client privilege under Pennsylvania law, a party resisting discovery must show: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar or a subordinate and is acting as a lawyer in connection with the communications; (3) the communication relates to a fact of which attorney was informed by client without presence of strangers for the purpose of securing an opinion of law, legal services, or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client. *Marian Bank v. Lawrence Voluck Associates Inc.,* 26 D.&C.3d 48, 51 (1982).

The attorney work product rule is set forth in Pa.R.C.P. 4003.3 and provides in pertinent part as follows:

"Subject to the provisions of Rules 4003.4 and 4003.5, a party may obtain discovery of any matter discoverable

under Rule 4003.1 even though prepared in anticipation of litigation or trial by or for another party or by or for that other party's representative, including his attorney, consultant, surety, indemnitor, insurer or agent. The discovery shall not include disclosure of the mental impressions of a party's attorney or his conclusions, opinions, memoranda, notes or summaries, legal research or legal theories . . . ."

The explanatory note to Rule 4003.3 clearly spells out the subject matter, which is precluded from discovery as the work product of the attorney. It states: "The rule is carefully drawn and means exactly what it says. It immunizes the lawyer's mental impressions, conclusions, opinions, memoranda, notes, summaries, legal research and legal theories, nothing more."

The court notes that the issue at trial in the present bad faith case will be whether Nationwide had a reasonable basis for its decision to proceed to trial in the *Hannigan v. Schoffstall* case. Nationwide's decision to litigate the case shall be measured against the following standard: "there is no absolute duty on the insurer to settle a claim when a possible judgment against the insured may exceed the amount of the insurance coverage. . . . The requirement is that the insurer consider in good faith the interest of the insured as a factor in coming to a decision as to whether to settle or litigate a claim against the insured. . . . But, that does not mean that the insurer is bound to submerge its own interest in order that the insured's interest may be made paramount. It means that when there is little possibility of a verdict or settlement within the limits of the policy, the decision to expose the insured to personal pecuniary loss must be based on a bona fide belief by the insurer, predicated upon all of the circumstances of the case,

that it has a good possibility of winning the suit. While it is the insurer's right under the policy to make the decision as to whether a claim against the insured should be litigated or settled, it is not a right of the insurer to hazard the insured's financial well-being. Good faith requires that the chance of a finding of nonliability be real and substantial and that the decision to litigate be made honestly." *Cowden v. Aetna Casualty and Surety Company*, 389 Pa. 459, 470-71, 134 A.2d 223, 228 (1957).

In the present case, the plaintiff wishes to depose Ms. Gewen to determine (1) Nationwide's "intent/corporate philosophy" as it relates to whether the company considers the insured's best interests in situations where an excess verdict is a possibility and (2) if Nationwide ever attempted to influence or suppress any testimony by Ms. Gewen. (See orders attached to plaintiff's brief in opposition to motion to quash.) As for the first purpose for Ms. Gewen's testimony, namely, to discover Nationwide's intent/philosophy, the plaintiff contends that her testimony is necessary to corroborate some of the statements made by Jay Carlin, Esquire, a former Nationwide claims attorney, at his deposition. Mr. Carlin testified that, in his opinion, certain management-level individuals at Nationwide thought that the attorneys representing policyholders owed a duty to Nationwide, not the policyholder. (Carlin deposition, p. 39.) According to Carlin, the managers that he spoke with believed that the decision whether to settle or try a case should be based on the best interests of Nationwide rather than the best interests of the insured. (Carlin deposition, p. 39.) Carlin further testified that he was admonished for giving deposition testimony unfavor-

able to Nationwide in the past, and there was an unspoken rule that employees of Nationwide should not provide testimony unfavorable to the company. (Carlin deposition, pp. 54-55.)

The plaintiff argues that Nationwide is now taking the position that Mr. Carlin's testimony is not relevant to this bad faith case because Carlin handled commercial lines of insurance rather than personal lines, such as automobile insurance. Plaintiff contends that Ms. Gewen's testimony is relevant because she handled personal lines, such as automobile insurance. According to the plaintiff, Ms. Gewen's deposition is needed to discover whether the intent/philosophy of the management of Nationwide in the commercial lines, as described by Mr. Carlin, was also evident in the personal lines managers who had direct oversight for the handling of the *Hannigan v. Schoffstall* case.

The court finds initially that neither the attorney-client privilege nor the work product rule precludes the testimony of Ms. Gewen for the limited purposes requested by the plaintiff. The plaintiff does not seek to ask questions or obtain information regarding events that occurred *after* the filing of the present bad faith case. Instead, the plaintiff seeks to discover whether the intent/philosophy of Nationwide managers in commercial lines, as testified to by Jay Carlin, Esquire, is evident in the personal lines of insurance. In addition, the plaintiff seeks to discover whether Nationwide has attempted, at any time, to influence or suppress any testimony by Ellen Gewen, Esquire. Given these limited areas of inquiry, the attorney-client privilege would not bar the deposition testimony of Ms. Gewen, since the areas of inquiry would neither delve into the legal advice of Ms. Gewen regarding specific cases nor discussions as to tactics to be utilized in the defense of particular

cases. *Marian Bank v. Lawrence Voluck Associates Inc., supra.* See also, *U.S. Fidelity & Guaranty Company,* 809 F. Supp. 355 (M.D. Pa. 1992). Moreover, Ms. Gewen's testimony would not involve disclosure of her mental impressions, conclusions, opinions, memoranda, notes or summaries, legal research or legal theories. See Pa.R.C.P. 4003.3.

The court also concludes that Ms. Gewen's testimony would be relevant to the subject matter of the present claim. Under Pa.R.C.P. 4003.1, a party may obtain discovery regarding any matter, which is relevant to the subject matter of the pending action. Here, the plaintiff must prove that Nationwide did not have a reasonable basis for proceeding to trial in the *Hannigan v. Schoffstall* case. Nationwide's philosophy/intent with regard to its duty to the insured is relevant to the issue of whether there was a reasonable basis for the decision to proceed to trial. Ms. Gewen's knowledge of Nationwide managers involved in personal lines of insurance, who believe that their duty to the company supersedes their duty to the policyholder, may be probative of the company's philosophy/intent in handling excess verdict cases. Likewise, if Nationwide has in the past attempted to influence or suppress any testimony by Ms. Gewen, this may be probative of the company's philosophy/intent with regard to litigation in general. Because Ms. Gewen's testimony may be relevant to the issues in the present bad faith claim, the motion to quash the subpoena of Ellen B. Gewen, Esquire, shall be refused.

Accordingly, we shall direct the following:

(1) The motion to quash the subpoena of Ellen B. Gewen, Esquire, shall be refused. The plaintiff shall be permitted to depose Ellen Gewen, Esquire, but may inquire only as to whether the testimony of Jay Carlin,

Esquire, regarding the philosophy/intent of Nationwide managers who handle commercial lines of insurance, applies to managers who handled personal lines of insurance during the time of the *Hannigan v. Schoffstall* case. The plaintiff shall also be permitted to inquire whether Nationwide has at any time attempted to influence or suppress any testimony by Ellen Gewen, Esquire.

(2) The prothonotary shall provide notice of this opinion and order as required by law.