584 S.E.2d 480

STATE of West Virginia ex rel. M. Andrew BRISON and Rebecca Stepto, Petitioners

v.

The Honorable Tod J. KAUFMAN, Judge of the Circuit Court of Kanawha County, and Deborah K. Falls, Administratrix of the Estate of Cledith Lee Falls, Jr., Deceased, Respondents.

and

State of West Virginia ex rel. Nationwide Mutual Insurance Company and Ash Cowder, Jr., Petitioners

v.

The Honorable Tod J. Kaufman, Judge of the Circuit Court of Kanawha County, and Deborah K. Falls, Administratrix of the Estate of Cledith Lee Falls, Jr., Deceased, Respondents.

Nos. 31114, 31115.

Supreme Court of Appeals of West Virginia.

Submitted March 26, 2003.

Decided June 13, 2003.

Concurring Opinion of Justice Davis June 24, 2003.

Daniel R. Schuda, Schuda & Associates, Charleston, for M. Andrew Brison and Rebecca Stepto, Petitioners.

Barbara J. Keefer, Maria Marino Potter, MacCorkle, Lavender, Casey and Sweeney, Charleston, for Nationwide Mutual Insurance Company and Ash Cowder, Jr., Petitioners.

John Einreinhofer, Robin L. Godfrey, Charleston, for Deborah K. Falls, Respondent.

Paul T. Farrell, Jr., Wilson, Frame, Benninger & Metheney, Morgantown, Michael J. Romano, Romano Law Offices, Clarksburg, for West Virginia Trial Lawyers Association, Amicus Curiae.

Marc E. Williams, J. David Bolen, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, for Defense Research Institute, Amicus Curiae.

James S. Crockett, Jr., Mary M. August, Spilman, Thomas & Battle, for West Virginia Insurance Federation, Amicus Curiae.

Henry W. Jernigan, Jr., Dinsmore & Shohl, Charleston, Lucien G. Lewin, Bridget M. Cohee, Martinsburg, for Defense Trial Counsel of West Virginia, Amicus Curiae.

Robert D. Aitcheson, Charles Town, David P. Greenberg, Martinsburg, for Ok Cha and Robert Collins, Amicus Curiae.

McGRAW, Justice:

In these original proceedings, an insurance company, its former claims representative and two of its former attorneys seek to prohibit the enforcement of a January 7, 2003, pre-trial discovery order entered in a "bad faith" and unfair trade practices action filed in the Circuit Court of Kanawha County, West Virginia. Specifically, Nationwide Mutual Insurance Company, claims representative Ash Cowder, Jr., and attorneys M. Andrew Brison and Rebecca Stepto, hereinafter "petitioners," ask this Court to prohibit the compelled production and disclosure of the petitioners' litigation file and redacted portions of the petitioners' claim file, both of which were created and maintained during an earlier wrongful death action involving a claim for underinsured motorist coverage.

The petitioners contend, as they alleged in a motion for a protective order denied below, that the litigation file and the redacted portions of the claim file are subject to the attorney-client privilege and the work product doctrine. Thus, the petitioners argue that the Circuit Court exceeded its jurisdiction in ordering production and disclosure. Respondent, Deborah K. Falls, however, the plaintiff in the underlying bad faith action and also the plaintiff in the earlier wrongful death action, contends that the ruling of the Circuit Court was within its discretion.

This Court has before it the petitions for writs of prohibition, the responses thereto, all exhibits and the arguments of counsel. In addition, this Court has received *amicus curiae* briefs from the West Virginia Trial Lawyers Association, the Defense Research Institute, the West Virginia Insurance Federation, the Defense Trial Counsel of West Virginia and Ok Cha and Robert Collins.

For the reasons expressed below, this Court holds that the Circuit Court exceeded its jurisdiction in ordering production and disclosure of the litigation file and the redacted portions of the claim file by failing to apply the correct legal standards to the petitioners' assertions of attorney-client privilege and work product doctrine. Accordingly, production and disclosure of the documents in question are hereby prohibited pending a renewal below of the respondent's motion for production and a renewal of the petitioners' motion for a protective order, following which the Circuit Court shall apply the principles expressed herein.

I.

## FACTUAL BACKGROUND AND THE WRONGFUL DEATH ACTION

On August 7, 1999, Cledith Lee Falls, Jr., the son of respondent Deborah K. Falls, was killed in an accident on State Route 39 in Nicholas County while riding as a passenger in an automobile driven by April D. Knight. At least two other vehicles were involved in the accident. Soon after, in September 1999, respondent Falls, as Administratrix of the Estate of Cledith Lee Falls, Jr., filed a wrongful death action in the Circuit Court of Kanawha County against April D. Knight and others.

Because the accident involved several motor vehicles, the insurance proceeds of various policies were potentially available to respondent Falls with regard to her son's death. Respondent Falls, however, asserted a claim for underinsured motorist coverage

against a policy issued by petitioner Nationwide Mutual Insurance Company to Cledith Lee Falls' stepmother, Tonya Falls. According to the respondent, the claim against the stepmother's policy was valid because Cledith Lee Falls, Jr., had been residing in his stepmother's household at the time of the accident. Although initially disputing the decedent's residence, Nationwide, by letter dated May 31, 2000, from claims representative Cowder, stated that coverage could be provided for the respondent's underinsurance claim. In the meantime, having been formally served with notice of the wrongful death action, Nationwide assigned the matter to attorney M. Andrew Brison, who filed a response in the Circuit Court of Kanawha County reserving Nationwide's right to file various defenses. *W.Va.Code*, 33–6–31(d) (1998). Mr. Brison was an attorney in the law firm Dwane L. Tinsley & Associates, Nationwide Trial Division, Charleston, West Virginia.

By letter dated October 26, 2000, petitioner Brison stated to counsel for respondent Falls that all available insurance proceeds from other applicable policies would have to be paid before any payment of underinsured motorist proceeds would be made by Nationwide. Similarly, in a subsequent letter to respondent Falls' counsel, dated January 16, 2001, petitioner Cowder stated: "Once you have provided us with the information confirming that all applicable limits of coverage have been exhausted, we will then be able to give consideration to payment under our underinsured motorist claim." Thereafter, petitioner Stepto, an attorney replacing Mr. Brison at Dwane L. Tinsley & Associates, filed a Notice of Court Scheduling Conflict and argued that the trial of the wrongful death action, set for April 30, 2001, be continued. The Circuit Court refused to continue the trial. Thereafter, on April 26, 2001, Nationwide paid the respondent, Deborah K. Falls, $50,000, the policy limits concerning the underinsurance claim. In return, respondent Falls signed a release of all claims against Nationwide with regard to the accident of August 7, 1999, and with regard to all negotiations in relation thereto.

## II.

## THE UNDERLYING BAD FAITH ACTION

In December 2001, respondent Falls filed a "bad faith" and unfair trade practices action in the Circuit Court of Kanawha County against Nationwide, claims representative Ash Cowder, Jr., and others. The respondent alleged that Nationwide's delay in paying her claim for underinsurance benefits was unreasonable, thereby constituting bad faith and a violation of the West Virginia Unfair Trade Practices Act, *W.Va.Code*, 33–11–1 (1974), *et seq.* Nationwide and Cowder, on the other hand, filed an answer and motion to dismiss in which they denied the allegations of the complaint and asserted that the release signed by respondent Falls barred the bad faith and unfair trade practices action. The answer and motion to dismiss were filed upon behalf of Nationwide and Cowder by a Charleston law firm completely separate from Dwane L. Tinsley & Associates and attorneys Brison and Stepto.

In January 2002, respondent Falls filed a discovery request in the bad faith and unfair trade practices action for production of Nationwide's claim file, which concerned the respondent's claim for underinsured motorist benefits. In addition, respondent Falls requested production of the litigation file created and maintained by petitioners Brison and Stepto with regard to the wrongful death action. Specifically, the litigation file was generated by Brison and Stepto, as attorneys employed by Dwane L. Tinsley & Associates, Nationwide Trial Division, following service upon Nationwide of notice of the wrongful death action. In response to the discovery request, the petitioners filed a motion for a protective order raising the attorney-client privilege and the work product doctrine. According to the petitioners, both files evidenced privileged attorney-client communications between Nationwide and its counsel during the wrongful death action as to the respondent's claim for underinsured motorist benefits. Consequently, an abridged claim file was disclosed to the respondent (with an attached "privilege log"), and the issues of attorney-client privilege and the work product doctrine, as to both the litigation file and

the redacted portions of the claim file, remained for the Circuit Court to decide.

Following a hearing and an *in camera* review of the documents in question, the Circuit Court entered the order of January 7, 2003, denying the petitioners' motion for a protective order and directing the petitioners to produce and disclose, in their entirety, the litigation file and the redacted portions of the claim file. In so ruling, the Circuit Court stated that the files were not subject to the protections of either the attorney-client privilege or the work product doctrine. The Circuit Court focused primarily, however, upon the attorney-client privilege and concluded as follows:

> In this case, after a thorough review of each document in ... Nationwide's attorney file and claims file, the Court finds· that no document in the files is protected by the attorney-client privilege. The documents simply contain facts that were not meant to be confidential. Furthermore, the Court finds that the issue of bad faith has brought into question the advice of Nationwide's attorneys, and, therefore, the attorney-client privilege is waived.

The order of January 7, 2003, contained no findings of fact concerning the nature of the attorney-client relationship between Nationwide and attorneys Brison and Stepto. Nor did the order explain why, inasmuch as the documents "contain facts" which were not meant to be confidential, the *entirety* of both the litigation file and the redacted portions of the claim file were discoverable, other matters contained therein notwithstanding. Finally, the order included no findings of fact with regard to the two files concerning the work product doctrine.

On February 6, 2003, petitioners Nationwide, Cowder, Brison and Stepto filed petitions in this Court seeking relief in prohibition with regard to the order of January 7, 2003. On February 13, 2003, this Court issued rules to show cause why relief should not be granted.

### III.

### STANDARDS OF REVIEW

■ This Court has original jurisdiction in prohibition proceedings pursuant to Art.

VIII, Sec. 3, of The Constitution of West Virginia. That jurisdiction is recognized in Rule 14 of this Court's Rules of Appellate Procedure and in various statutory provisions. *W.Va.Code,* 51–1–3 (1923); *W.Va. Code,* 53–1–2 (1933). In considering whether to grant relief in prohibition, this Court stated in the syllabus point of *State ex rel. Vineyard v. O'Brien,* 100 W.Va. 163, 130 S.E. 111 (1925), as follows: "The writ of prohibition will issue only in clear cases where the inferior tribunal is proceeding without, or in excess of, jurisdiction." *State ex rel. Murray v. Sanders,* 208 W.Va. 258, 260, 539 S.E.2d 765, 767 (2000); *State ex rel. Barden and Robeson Corporation v. Hill,* 208 W.Va. 163, 166, 539 S.E.2d 106, 109 (2000); *Health Management, Inc. v. Lindell,* 207 W.Va. 68, 72, 528 S.E.2d 762, 766 (1999). *See also, W.Va. Code,* 53–1–1 (1923); syl. pt. 1, *State ex rel. Steven Michael M. v. Merrifield,* 203 W.Va. 723, 510 S.E.2d 797 (1998); syl. pt. 2, *Long Flame Coal Company v. State Compensation Commissioner,* 111 W.Va. 409, 163 S.E. 16 (1932).

■ The above notwithstanding, the orders of a circuit court granting discovery requests are interlocutory in nature and are, therefore, usually reviewable by appeal only, rather than subject to extraordinary remedies. Discovery orders, such as the order before us, which compel the production and disclosure of ostensibly confidential material, however, are atypical. That is because, if the production and disclosure of such material occurs upon the basis of an erroneous order, the harm resulting therefrom is not correctable upon appeal. Thus, this Court held in syllabus point 3 of *State ex rel. United States Fidelity and Guaranty Company v. Canady,* 194 W.Va. 431, 460 S.E.2d 677 (1995): "When a discovery order involves the probable invasion of confidential materials that are exempted from discovery under Rule 26(b)(1) and (3) of the West Virginia Rules of Civil Procedure, the exercise of this Court's original jurisdiction is appropriate." Syl. pt. 3, *State ex rel. Medical Assurance of West Virginia v. Recht,* no. 30840, 583 S.E.2d 80 (W.Va. 2003); *State ex rel. Charles Town General Hospital v. Sanders,* 210 W.Va. 118,

123–24, 556 S.E.2d 85, 90–91 (2001); *State ex rel. West Virginia State Police v. Taylor,* 201 W.Va. 554, 562, 499 S.E.2d 283, 291 (1997); syl. pt. 2, *State ex rel. United Hospital Center v. Bedell,* 199 W.Va. 316, 484 S.E.2d 199 (1997). *See also,* syl. pt. 1, *State Farm Mutual Automobile Insurance Company v. Stephens,* 188 W.Va. 622, 425 S.E.2d 577 (1992), stating that prohibition "is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."

■ Generally speaking, Rule 26(b)(1) of the West Virginia Rules of Civil Procedure concerns the attorney-client privilege and Rule 26(b)(3) of those Rules concerns the work product doctrine. In that regard, *Medical Assurance, supra,* an original proceeding in prohibition involving the attorney-client privilege and the work product doctrine, holds:

A circuit court's ruling on discovery requests is reviewed [under] an abuse of discretion standard; but, where a circuit court's ruling turns on a misinterpretation of the West Virginia Rules of Civil Procedure, our review is plenary. The discretion that is normally given to a trial court's procedural decisions does not apply where the trial court makes no findings or applies the wrong legal standard.

Syl. pt. 5, *Medical Assurance.*

■ The findings required of a circuit court, suggested above in *Medical Assurance,* are critical when an otherwise interlocutory order to compel production and disclosure is brought before this Court upon a request for relief in prohibition. However, the right of a litigant to file a petition for extraordinary relief in such a case carries with it the responsibility to ask the circuit court to set forth findings and conclusions in order to make the discovery ruling clear. As syllabus point 6 of this Court's opinion in *State ex rel. Allstate Insurance Company v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75 (1998), states in part: "A party seeking to petition this Court for an extraordinary writ based upon a non-appealable interlocutory decision of a trial court, must request the trial court set out in an order findings of fact and conclusions of law that support and form

the basis of its decision." Here, such a request was made. On December 23, 2002, Nationwide, indicating that it was considering filing a petition for extraordinary relief in this Court, asked the Circuit Court to enter an order "with specific findings of fact and conclusions of law."

## IV.

## DISCUSSION

In reviewing the January 7, 2003, order of the Circuit Court, it is important to define the type of underlying bad faith and unfair trade practices action brought by respondent Falls against petitioners Nationwide and claims representative Cowder. Fortunately, in this complex area of the law, this Court may look to *State ex rel. Allstate Insurance Company v. Gaughan, supra,* for assistance. In *Gaughan,* this Court observed that courts generally recognize two broad categories of bad faith actions against insurers: first-party bad faith actions and third-party bad faith actions. 203 W.Va. at 369, 508 S.E.2d at 86.

■ In a third-party bad faith action, a lawsuit is usually brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor. For example, in the recent case of *State ex rel. Medical Assurance of West Virginia v. Recht, supra,* a plaintiff, who had prevailed against an insured tortfeasor, brought an action for unfair claim settlement practices against the tortfeasor's insurance company. In prohibiting the enforcement of a discovery order compelling the production of the insurance company's investigative and claims files concerning the tort action, this Court, in *Medical Assurance,* held that the Circuit Court of Ohio County failed to correctly analyze the insurer's assertion of the attorney-client privilege and the work product doctrine.

■ On the other hand, in a first-party bad faith action, a lawsuit is usually brought by an insured against his or her own insurance company for failing to use good faith in settling a claim for insurance coverage. For example, in *State ex rel. United States Fidelity and Guaranty Company v. Canady, su-*

*pra,* this Court prohibited the enforcement of a discovery order in an action wherein an insured brought a bad faith and unfair trade practices lawsuit against his own insurance company. The insured alleged that the insurance company failed to promptly pay him fire insurance proceeds following the destruction of his residence. The *United States Fidelity and Guaranty Company* case exemplifies the type of first-party bad faith action, described in *Gaughan,* wherein the interests of the insured and the insurer are "presumptively in conflict." 203 W.Va. at 370, fn. 17, 508 S.E.2d at 87, fn. 17.

Manifestly, the action brought by respondent Falls against petitioners Nationwide and Cowder was a first-party bad faith and unfair trade practices action wherein the interests of the respondent and the petitioners were in conflict. Following the somewhat contested question of the decedent's residency, it was determined that the decedent was an insured under the policy issued by Nationwide to the decedent's stepmother, Tonya Falls. That policy formed the basis of the respondent's claim for underinsured motorist coverage. From that time, nearly a year went by prior to the payment of the underinsurance claim in April 2001. During the wrongful death action, Nationwide, rather than respondent Falls, was the client of attorneys Brison and Stepto. Accordingly, respondent Falls' pursuit of the litigation file and the redacted portions of the claim file necessarily implicates the legal representation of Nationwide by Brison and Stepto. Therefore, the petitioners' assertion of attorney-client privilege and the work product doctrine must be viewed in that context.

Nor, for purposes of this opinion, is it dispositive that Brison and Stepto were members of a "captive law firm" or that the litigation file of those attorneys was included in the discovery request of respondent Falls in addition to her request for the claim file.

■ As the term is understood, attorneys Brison and Stepto were members of a "captive law firm" because, although their law office, Dwane L. Tinsley & Associates, Nationwide Trial Division, was in a separate location from the Nationwide claims office, Brison and Stepto received their paychecks from Nationwide and worked exclusively upon Nationwide insurance matters. As indicated above, the phrase "Nationwide Trial Division" appeared upon the law firm's letterhead. Such a manner of practicing law in West Virginia has been approved by the West Virginia State Bar through its Lawyer Disciplinary Board. *See,* Legal Ethics Inquiry 99–01. In that regard, it is self-evident that attorneys practicing in "captive law firms" are subject to the same ethical responsibilities toward their clients and to the legal profession as are other attorneys practicing in this State.

■ The exhibits in these proceedings demonstrate that Brison and Stepto, in fact, represented Nationwide as attorneys, rather than merely as insurance adjusters or employee investigators. *See, United States Fidelity and Guaranty Company, supra,* 194 W.Va. at 444, 460 S.E.2d at 690. Both filed pleadings in the respondent's wrongful death action, and Ms. Stepto presented argument at a pre-trial hearing in that action concerning the scheduled trial date. Thus, both Brison and Stepto performed traditional legal duties in the wrongful death action, and they had standing to raise the attorney-client privilege and the work product doctrine.

Moreover, for purposes of this opinion, this Court treats as equivalent the attorneys' litigation file and the redacted portions of the claim file, both of which are sought by respondent Falls and both of which concern her claim for underinsured motorist benefits. The two files were not differentiated by the Circuit Court in the order of January 7, 2003, and this Court's analysis of the attorney-client privilege and the work product doctrine applies equally to both.

## V.

## THE ATTORNEY–CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE

In view of the above, the petitioners' assertions inexorably fall within a more traditional analysis of the attorney client privilege and the work product doctrine. In particular, inasmuch as there was never any express

release of the two files in question to a third party, the less protective "quasi attorney-client privilege" identified in *Gaughan, supra,* does not apply.

▇▇▇▇ Pursuant to Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery may be obtained "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action[.]" The import of Rule 26(b)(1), associated with the traditional attorney-client privilege, was noted in *United States Fidelity and Guaranty Company, supra,* as follows: "In clear language, Rule 26 provides that privileged matters, although relevant, are not discoverable. As a result of this rule, many documents that could very substantially aid a litigant in a lawsuit are neither discoverable nor admissible as evidence." 194 W.Va. at 441, 460 S.E.2d at 687. In fact, as stated in *Gaughan:* "Traditional attorney-client privileged material is virtually undiscoverable under Rule 26(b) of the West Virginia Rules of Civil Procedure." 203 W.Va. at 373, 508 S.E.2d at 90. Nevertheless, as recognized in syllabus point 4 of *United States Fidelity and Guaranty Company,* the burden of establishing the attorney-client privilege, and the work product exception for that matter, "always rests upon the person asserting it."

▇▇▇▇ In syllabus point 2 of *State v. Burton,* 163 W.Va. 40, 254 S.E.2d 129 (1979), this Court held:

In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from the attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be intended to be confidential.

Syl. pt. 3, *State ex rel. Westbrook Health Services v. Hill,* 209 W.Va. 668, 550 S.E.2d 646 (2001); syl. pt. 6, *Bedell, supra;* syl. pt. 2, *State v. Jarvis,* 199 W.Va. 38, 483 S.E.2d 38 (1996).

▇▇▇▇ In syllabus point 11 of *Marano v. Holland,* 179 W.Va. 156, 366 S.E.2d 117 (1988), the importance of the privilege was emphasized: "The attorney-client privilege originated at common law, and has as its principal object the promotion of full and frank discourse between attorney and client so as to insure sound legal advice or advocacy." *State v. Rodoussakis,* 204 W.Va. 58, 68, 511 S.E.2d 469, 479 (1998). Nevertheless, in syllabus point 8 of *United States Fidelity and Guaranty Company, supra,* this Court held that "[a] party may waive the attorney-client privilege by asserting claims or defenses that put his or her attorney's advice in issue." *See also,* syl. pt. 12 of *Marano, supra.*

As indicated above, the Circuit Court concluded that, inasmuch as the documents reviewed *in camera* contained "facts that were not meant to be confidential," the entire contents of the litigation file and the redacted portions of the claim file were subject to production and disclosure. The Circuit Court treated that conclusion separately from the issue of whether the attorney-client privilege had been waived but did not explain why the documents were not meant to be confidential. The validity of compelling disclosure of the entire contents of the two files is doubtful, especially in view of the following assertion of the petitioners: "Mr. Brison was selected by Nationwide to represent Nationwide's interests in the claim made against it for underinsured benefits ...[.] * * * His job was to defend Nationwide and render legal advice." The order of January 7, 2003, contained no findings of fact concerning the nature of the attorney-client relationship between Nationwide and attorneys Brison and Stepto.

▇▇▇▇ Of more concern, however, is the conclusion of the Circuit Court that "the issue of bad faith has brought into question the advice of Nationwide's attorneys, and, therefore, the attorney-client privilege is waived." That conclusion was set forth in the absence of findings as to whether anyone associated with Nationwide actually waived the privilege. Nationwide and Cowder deny that they put in issue, in the respondent's bad faith action, any legal advice they received concerning the underinsurance claim. *See,* syl. pt. 8, *United States Fidelity and Guaranty Company, supra.* In any event, the Circuit Court did not address, for exam-

ple, whether any of the correspondence received by respondent Falls from attorneys Brison and Stepto or from Cowder may have constituted a waiver of the attorney-client privilege. Instead, the Circuit Court suggests, by its ruling, that the attorney-client privilege applicable in an underlying matter will be considered waived in the event a bad faith action is filed. Such a suggestion constitutes "too tenuous a premise upon which to anchor any steady standard of law." *State ex rel. J.L.K. v. R.A.I.*, 170 W.Va. 339, 346, 294 S.E.2d 142, 149 (1982). Rather, this Court holds that, where the interests of an insured and his or her insurance company are in conflict with regard to a claim for underinsured motorist coverage and the insurance company is represented by counsel, the bringing of a related first-party bad faith action by the insured does not automatically result in a waiver of the insurance company's attorney-client privilege concerning the underinsurance claim.

Here, the Circuit Court failed to apply the correct legal standards with regard to the petitioners' assertions of attorney-client privilege. Therefore, the order compelling production and disclosure was erroneous, and discovery concerning the litigation file and the redacted portions of the claim file should be prohibited until further consideration by the Circuit Court.

██ If the Circuit Court subsequently determines that the documents in question are not barred by the attorney-client privilege, a consideration of the work product doctrine would then be warranted. *United States Fidelity and Guaranty Company, supra,* 194 W.Va. at 444, 460 S.E.2d at 690. Generally, the work product doctrine operates to protect documents prepared in anticipation of litigation. *Gaughan, supra,* 203 W.Va. at 374, 508 S.E.2d at 91. The doctrine is reflected in the provisions of Rule 26(b)(3) of the West Virginia Rules of Civil Procedure which states in part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative

(including the party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of mental impressions, conclusions, opinions or legal theories of an attorney or other representative of a party concerning the litigation.

██ As this Court held in syllabus point 7 of *In re Markle,* 174 W.Va. 550, 328 S.E.2d 157 (1984): "Rule 26(b)(3) of the West Virginia Rules of Civil Procedure makes a distinction between factual and opinion work product with regard to the level of necessity that has to be shown to obtain their discovery." Syl. pt. 10, *Medical Assurance, supra;* syl. pt. 2, *State ex rel. Chaparro v. Wilkes,* 190 W.Va. 395, 438 S.E.2d 575 (1993). As between the two, opinion work product is more scrupulously protected. *See, United States Fidelity and Guaranty Company, supra,* 194 W.Va. at 445, 460 S.E.2d at 691.

██ The order of January 7, 2003, contained no findings of fact concerning the litigation file or the redacted portions of the claim file with regard to the work product doctrine. As with the attorney-client issue, discovery concerning those documents should be prohibited until further consideration by the Circuit Court.

## VI.

## CONCLUSION

Upon all of the above, this Court holds that the Circuit Court of Kanawha County exceeded its jurisdiction in ordering production and disclosure of the litigation file and the redacted portions of the claim file by failing to apply the correct legal standards to the petitioners' assertions of attorney-client privilege and work product doctrine. Accordingly, production and disclosure of the documents in question are hereby prohibited

pending a renewal below of respondent Falls' motion for production and a renewal of the petitioners' motion for a protective order, following which the Circuit Court shall apply the principles expressed herein.

Writs granted as moulded.

Justice DAVIS concurs and files a concurring opinion.

DAVIS, J., concurring:

In this case, the majority has concluded that, in a first-party bad faith action against an insurer, the attorney-client privilege and work product rule attach to documents contained in an insured claim file and litigation file. I concur in the decision reached by the majority opinion. I have chosen to write separately to address a distinction that courts have made involving first-party bad faith cases against insurers, and the implications of that distinction to the majority's holding in this case.

## TWO TYPES OF FIRST–PARTY BAD FAITH ACTIONS AGAINST AN INSURER

"There are different types of first-party bad faith actions." *Palmer by Diacon v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895, 905 (1993). That is, a first-party bad faith action against an insurer may arise in two contexts. First, the first-party bad faith action may arise when an insurer fails to use good faith in resolving a "loss claim" filed by the insured. The second type of first-party bad faith action may arise as a result of the insurer's failure to use good faith in settling a lawsuit by a third-party the insured harmed, resulting in an "excess judgment" against the insured.[1]

**(1) Loss claim.** "Generally, insurer and insured are in an adversary relationship whenever there is any claim by an insured for loss under any insurance policy." *State ex rel. Safeco Nat'l. Ins. Co. of America v. Rauch,* 849 S.W.2d 632, 635 (Mo.App.1993) (citation omitted). In this situation, an insured files a claim for a loss he or she sustained and the insurer either denies coverage, unjustifiably delays payment, or offers an amount the insured deems insufficient to cover the loss. Whichever response an insurer makes places the parties in an adversarial relationship. *See Palmer v. Farmers Ins. Exch.*, 261 Mont. 91, 861 P.2d 895, 905 (1993) ("In this type of action, the claimant and the insurer are in adverse positions from the outset of the underlying case."). *See also Squealer Feeds v. Pickering,* 530 N.W.2d 678, 684 (Iowa 1995) (same).

As a result of the adversarial posture of a loss claim, most courts permit an insurer to assert the attorney-client privilege and apply the work product rule to documents contained in an insured's claim file and any litigation file that the insurer may have generated.[2] *See United Servs. Auto. Ass'n v. Werley,* 526 P.2d 28 (Alaska 1974) (claim for a loss to which attorney-client privilege applies); *Brown v. Superior Court,* 137 Ariz. 327, 670 P.2d 725 (1983) (claim for a loss to which work product rule applies); *State Farm Fire & Cas. Co. v. Superior Court,* 216 Cal.App.3d 1222, 265 Cal.Rptr. 372 (1989) (claim for a loss to which attorney-client privilege applies); *Clausen v. National Grange Mut. Ins. Co.,* 730 A.2d 133 (Del.Super.Ct.1997) (claim for a loss to which attorney-client privilege and work product rule apply); *Kujawa v. Manhattan Nat'l. Life Ins. Co.,* 541 So.2d 1168 (Fla.1989) (claim for a loss to which attorney-client privilege and work product immunity apply); *Hartford Fin. Servs. Group, Inc. v. Lake County Park & Recreation Bd.,* 717 N.E.2d 1232 (Ind.Ct.

---

1. *See State ex rel. Allstate Ins. Co. v. Gaughan,* 203 W.Va. 358, 370 n. 17, 508 S.E.2d 75, 87 n. 17 (1998) ("There are two types of first-party bad faith actions against an insurer. One such action may arise when the insurer fails to use good faith in settling a claim by someone the insured harmed or injured. In this context, the interests of the insured and insurer are presumptively mutual. However, the second type of first-party bad faith action against an insurer concerns a claim brought by the insured against the insurer,

e.g., house burned down. In this second type of first-party bad faith action, the interest of the insured and insurer are actually presumptively in conflict.").

2. A litigation file is usually generated when, for example, an insurer joins a litigation where underinsured/uninsured coverage is involved, or an action instituted to determine whether coverage existed.

App.1999) (claim for a loss to which attorney-client privilege applies); *State ex rel. Safeco Nat'l. Ins. Co. of America v. Rauch,* 849 S.W.2d 632 (Mo.Ct.App.1993) (claim for a loss to which attorney-client privilege and work product rule apply); *Palmer v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895 (1993) (claim for a loss to which attorney-client privilege and work product immunity apply); *Hamdan v. New York Prop. Ins. Underwriting Ass'n,* 116 Misc.2d 706, 456 N.Y.S.2d 305 (1982) (claim for a loss to which work product rule applied to certain interrogatories); *Evans v. United Servs. Auto. Ass'n,* 142 N.C.App. 18, 541 S.E.2d 782 (2001) (claim for a loss to which attorney-client privilege and work product immunity apply); *Boone v. Vanliner Ins. Co.,* 91 Ohio St.3d 209, 744 N.E.2d 154 (2001) (claim for a loss to which attorney-client privilege applies); *Sims v. Travelers Ins. Co.,* 16 P.3d 468 (Okl.Civ.App.2000) (claim for a loss to which attorney-client privilege applies); *In re Texas Farmers Ins. Exch.,* 990 S.W.2d 337 (Tex.App.1999); (claim for a loss to which attorney-client privilege and work product immunity apply); *State ex rel. Dudek v. Circuit Court for Milwaukee County,* 34 Wis.2d 559, 150 N.W.2d 387 (1967) (claim for a loss to which attorney-client privilege and work product rule apply).[3]

(2) **Excess judgment.** When an insured is sued for injury or harm by a third-party, and an insurance company provides the insured with legal representation, courts have held that the "the insurer initially employs the attorney to represent the interests of both the insured and the insurer." *Jessen v. O'Daniel,* 210 F.Supp. 317, 331–32 (D.Mont. 1962). *See Longo v. American Policyholders' Ins. Co.,* 181 N.J.Super. 87, 436 A.2d 577, 580 (Law Div.1981) ("The attorney represented both the insurer and the insured. Counsel owed the insured the same unqualified loyalty as he would had he been personally retained.").[4] In this situation "an insured and his or her insurer share a common interest, that is, to limit liability in a tort action to within the policy limits." *Flores v. Barretto,* 99 Hawai'i 270, 54 P.3d 441, 451 (2002) (Moon, C.J., dissenting). However, it has been observed that "[f]irst-party bad faith cases involving dual representation often arise after a third-party claimant obtains a judgment in excess of policy limits and the insured later sues the insurance company for failure to settle within policy limits." *Palmer v. Farmers Ins. Exch.,* 261 Mont. 91, 861 P.2d 895, 905 (1993).

In first-party bad faith litigation arising out of a judgment against an insured in excess of policy limits, most courts do not permit the attorney-client privilege or work product rule to be used to prevent an insured from having access to his/her claim file and the litigation file in the underlying action. *See Fortune Ins. Co. v. Greene,* 775 So.2d 338 (Fla.Dist.Ct.App.2000) (attorney-client privilege and work product immunity do not ap-

**3.** "Because an insurance company has a duty in the ordinary course of business to investigate and evaluate claims made by its insureds, the claims files containing such documents usually cannot be entitled to work product protection. Normally, only after the insurance company makes a decision with respect to the claim, will it be possible for there to arise a reasonable threat of litigation so that information gathered thereafter might be said to be acquired in anticipation of litigation." *Pete Rinaldi's Fast Foods, Inc. v. Great American Ins. Companies,* 123 F.R.D. 198, 202 (M.D.N.C.1988). "While there are many nuances and differing views, case law exists to support the proposition that a document will be deemed to have been prepared in anticipation of coverage litigation if it is created after: (1) the insured tenders its claim for coverage; (2) it begins to appear that the insurer might deny coverage or reserve its rights; (3) the insurance company engages a coverage attorney in connection with the insured's claim; (4) the insurance company denies coverage; (5) coverage litigation appears imminent; or, (6) coverage litigation is actually commenced." M. Elizabeth Medaglia, et al., "Privilege, Work Product, and Discovery Issues in Bad Faith Litigation," 32 Tort & Ins. L.J. 1, 12 (1996).

**4.** "Courts and commentators have failed to reach agreement with respect to whether the insurer is a co-client of defense counsel. In some states, defense counsel is presumed to have two clients, the insurer and the insured. Other states have taken a contrary view and have declared that only the policyholder is a client." Michael F. Aylward, *Insurance Ethics: The Future of the Tripartite Relationship,* SG004 A.L.I.-A.B.A. 217, 224 (2001) (citations omitted). In *State ex rel. Allstate Insurance Co. v. Gaughan,* 203 W.Va. 358, 372, 508 S.E.2d 75, 89 (1998) we adopted the view that "the insurer actually hires the attorney to represent the insured."

ply); *Henke v. Iowa Home Mut. Cas. Co.,* 249 Iowa 614, 87 N.W.2d 920 (Iowa 1958) (attorney-client privilege and work product rule do not apply); *Hodges v. Southern Farm Bureau Cas. Ins. Co.,* 433 So.2d 125 (La.1983) (work product rule does not apply); *Dumas v. State Farm Mut. Auto. Ins. Co.,* 111 N.H. 43, 274 A.2d 781 (1971) (attorney-client privilege does not apply); *Longo v. American Policyholders' Ins. Co.,* 181 N.J.Super. 87, 436 A.2d 577 (Law Div.1981) (attorney-client privilege does not apply); *Colbert v. Home Indem. Co.,* 45 Misc.2d 1093, 259 N.Y.S.2d 36 (1965) (work product immunity does not apply); *Schoffstall v. Nationwide Ins. Co.,* 38 Pa. D. & C. 4th 457, 1998 WL 1108681 (Ct.Com.Pl.1998) (attorney-client privilege and work product rule do not apply). *See also Silva v. Fire Ins. Exch.,* 112 F.R.D. 699 (D.Mont.1986) (attorney-client privilege and work product immunity do not apply); *LaRocca v. State Farm Mut. Auto. Ins. Co.,* 47 F.R.D. 278 (W.D.Pa.1969) (attorney-client privilege does not apply); *Chitty v. State Farm Mut. Auto. Ins. Co.,* 36 F.R.D. 37 (E.D.S.C.1964) (attorney-client privilege and work product rule do not apply).

The common interest doctrine is usually cited as the reason for not allowing the attorney-client privilege and work product rule to apply in first-party bad faith litigation arising from a prior mutual interest litigation. "[U]nder the common interest doctrine, when an attorney acts for two different parties who each have a common interest, communications by either party to the attorney are not necessarily privileged in a subsequent controversy between the two parties." *Waste Mgmt., Inc. v. International Surplus Lines Ins. Co.,* 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322, 328 (1991). *See Henke v. Iowa Home Mut. Cas. Co.,* 249 Iowa 614, 87 N.W.2d 920, 923 (1958) ("[W]hen two or more parties consult an attorney for their mutual benefit, the testimony as to the communications between the parties or the attorney as to that transaction is not privileged in a later action between such parties or their representatives."). "The common interest doctrine has been recognized in the insured/insurer context when counsel has been retained or paid for by the insurer, and allows either party to obtain attorney-client communications related to the underlying facts giving rise to the claim, because the interests of the insured and insurer in defeating the third-party claim against the insured are so close that 'no reasonable expectations of confidentiality' is said to exist." *North River Ins. Co. v. Philadelphia Reinsurance Corp.,* 797 F.Supp. 363, 366 (D.N.J. 1992) (citation omitted).

**(3) The limitation of the majority's holding.** The majority opinion appropriately noted that this case "was a first-party bad faith ... action wherein the interests of the [insured] and the [insurer] were in conflict." In other words, the first-party bad faith action in this case came under the "loss claim" category of first-party bad faith actions, not the "excess judgment" category.[5] The majority's decision to extend the attorney-client privilege and work product rule to the facts of this case was consistent with the rule followed by most courts.

The majority decision did not discuss the "excess judgment" category of first-party bad faith actions. Because of the critical distinction between a first-party bad faith "loss claim" action and a first-party bad faith "excess judgment" action, I do not believe the majority opinion should be interpreted as applying to an "excess judgment" action.

In view of the foregoing, I concur.

---

5. The insured in this case sought underinsured coverage.