IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 14-0967

_____

**FILED**

October 14, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

FARMERS & MECHANICS MUTUAL INSURANCE COMPANY,
Petitioner

v.

MARLON ALLEN, SR.,
individually and as Administrator of the
Estate of Marcus Allen,
Respondent

_____

Appeal from the Circuit Court of Mineral County
The Honorable Phillip B. Jordan, Jr., Judge
Civil Action No. 12-C-43

REVERSED

_____

Submitted: September 22, 2015
Filed: October 14, 2015

Susan R. Snowden, Esq.                    Trevor K. Taylor, Esq.
Martin & Seibert, L.C.                    Taylor Law Office
Martinsburg, West Virginia                Morgantown, West Virginia
Counsel for the Petitioner                Counsel for the Respondent

JUSTICE KETCHUM delivered the Opinion of the Court.
JUSTICE DAVIS concurs and reserves the right to file a concurring Opinion.

SYLLABUS BY THE COURT

1.      "Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."  Syllabus Point 1, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).


2.      A tenant who is neither a named nor definitional insured of a landlord's homeowner's insurance policy is not an insured under the landlord's policy by the mere fact that the tenant may have an insurable interest in the leased property.

Justice Ketchum:

Petitioner Farmers & Mechanics Mutual Insurance Company ("F & M") appeals the September 2, 2014, order of the Circuit Court of Mineral County that granted summary judgment in favor of respondent, Marlon Allen, Sr., individually and as administrator of the estate of Marcus Allen ("the estate").

The issue raised in this appeal is whether a landlord's insurer has a right of subrogation against a tenant when the tenant causes damage to the leased premises under the following circumstances: (1) the tenant was not a named or definitional insured of the landlord's policy; (2) the tenant purchased his own renter's insurance after being advised to do so by the landlord; and (3) the lease agreement stated that the tenant was solely responsible for any damage he caused to the subject property.

The circuit court concluded that the tenant was an "equitable insured" of the landlord's insurance policy. It ruled that F & M (the landlord's insurer) could not maintain a subrogation action against the tenant's estate because of its finding that the tenant was an "equitable insured." On appeal, F & M argues that the circuit court erred when it ruled that F & M could not maintain a subrogation action against the estate. Upon review, we agree with F & M and reverse the circuit court's ruling.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Michael O'Connor and his adult daughter Shelly O'Connor own real property located at 175 Keys Street in Keyser, West Virginia ("subject property"), as

1

tenants in common. In December 2009, Shelly O'Connor entered into a lease-to-own agreement for the subject property with Marcus Allen. The agreement provided that Marcus Allen would pay Shelly O'Connor $625.00 per month for fourteen years, and that

> [t]he payment of $625.00 is broken down as follows, $555.00 will go for mortgage, insurance and taxes. $70.00 will go to Shelly O'Connor as interest for each month. The payment will go to [sic] in the bank each month until the house is paid in full. When the mortgage payments are paid in full at First United Bank, Shelly O'Connor will receive all further payments until the house is paid in full, which is $105,300. At that time, only the deed will be given to Marcus Troy Allen as well as changing [sic] homeowner name.

The agreement also stated that "if I [Shelly O'Connor] do not receive the payment in full . . . within 30 days after the due date, Mr. Allen will be evicted[.]" Further, the agreement stated, "[i]f there are any damages made to said house, after Mr. Allen moves in, he is solely responsible." Finally, the lease-to-own agreement described the consequences tenant Marcus Allen would face for causing damage to the property: "if the house is being damaged Mr. Allen will be evicted and have thirty days to get all his belongings out and return the keys to the landlord (Shelly O'Connor)."

Shelly O'Connor purchased a homeowner's insurance policy from F & M covering the subject property. The policy was effective from March 15, 2010, through March 15, 2011. According to Shelly O'Connor's deposition testimony, this policy was

2

originally purchased in 2006 and was renewed on a yearly basis thereafter.[1]  Shelly O'Connor was the named insured on the F & M policy.  Her father, Michael O'Connor, was named as an additional insured.  The policy also contained a "definitions" provision that defined who was covered under the policy.  This "definitional insured" provision of the policy states:

> **DEFINITIONS**
>
> A.  In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse of a resident of the same household.  "We", "us" and "our" refer to the Company providing this insurance.
>
> . . . .
>
> 5. "Insured" means:
>
> a. You and residents of your household who are:
> (1) Your relatives; or
> (2) Other persons under the age of 21 and in the care of any person named above;
>
> b.  A student enrolled in school full time, as defined by the school, who was a resident of your household before moving out to attend school[.]

---

[1] Shelly O'Connor moved into the subject property in 2006 and resided there until she entered into the lease-to-own agreement with Marcus Allen in December 2009.

The F & M homeowner's policy insured the subject property against various perils including risk of loss by fire. The policy did not name the tenant, Marcus Allen, as an insured, a definitional insured, or in any other capacity. Further, F & M was not made aware that the tenant, Marcus Allen, was living in the subject property, nor was it made aware of the lease-to-own agreement that Shelly O'Connor entered into with Marcus Allen.

Shelly O'Connor testified that she advised Marcus Allen to purchase renter's insurance. Marcus Allen thereafter purchased a renter's insurance policy from State Auto Insurance. Marcus Allen's rental insurance policy was effective from March 10, 2010, through March 10, 2011, and provided the following coverage and limits of liability: personal property ($20,000), personal liability ($100,000/each occurrence), loss of use ($6,000), and medical pay to others ($1,000/each person).

On May 6, 2010, Marcus Allen was cooking food on the stove in the subject property when a grease fire ensued. Marcus Allen died in the fire and the property sustained extensive damage. Thereafter, Shelly O'Connor filed an insurance claim under the F & M homeowner's policy. After reviewing the claim, F & M paid its insureds, Shelly O'Connor and Michael O'Connor, for the property damage caused by the fire.[2]

---

[2] Michael O'Connor testified that F & M paid $85,000.00 for the property damage caused by the fire.

The decedent's father, Marlon Allen, Sr., individually and in his capacity as the administrator of Marcus Allen's estate, filed a wrongful death claim against Michael O'Connor. This complaint alleged that Michael O'Connor, as landlord, was negligent in failing to have a smoke detector installed in the subject property which resulted in tenant Marcus Allen's death.[3] The complaint asserts, "Defendant O'Connor by renting [the] dwelling in question to the decedent assured him that the dwelling was safe, secure and inhabitable." Michael O'Connor filed an answer to this lawsuit. The answer included a counterclaim filed by his insurance company, F & M, asserting a subrogation claim against the tenant's estate for the proceeds F & M paid to Shelly O'Connor following the fire.[4]

The tenant's estate replied to F & M's counterclaim through counsel hired by State Auto (the insurer who provided renter's insurance to the decedent). It filed an

---

[3] Shelly O'Connor testified that she removed the old smoke detectors from the residence before Marcus Allen moved in and that she bought new smoke detectors that she gave to Marcus Allen. She testified that "there was probably six different times I told him that we needed – that he needs to let me put them (the smoke detectors) up." Shelly O'Connor stated that Marcus Allen refused because "he wanted to put them up where he wanted them, and he didn't want to keep moving them and have holes all over his walls." Shelly O'Connor testified that the new smoke detectors she purchased were found in a kitchen drawer in the subject property following the fire.

[4] F & M filed a motion to intervene pursuant to Rule 24 of the *West Virginia Rules of Civil Procedure* for the purpose of resolving "certain questions and disputes which have arisen regarding the status of decedent Marcus Allen as a potential insured on a policy of insurance issued by F & M[.]"

5

answer to the counterclaim asserting that F & M could not maintain a subrogation claim against the estate, arguing that tenant/decedent Marcus Allen obtained an interest in the F & M policy because a portion of each monthly payment he made to Shelly O'Connor under the lease-to-own agreement went to "mortgage, *insurance* and taxes." Thus, the estate argued, Marcus Allen was an additional insured under the F & M homeowner's policy, and under established insurance law, F & M could not seek subrogation against its own insured.

On October 8, 2013, F & M filed a motion for summary judgment seeking a ruling that tenant/decedent Marcus Allen was not an insured under the F & M policy. On November 1, 2013, the estate filed a cross-motion for summary judgment arguing that Marcus Allen should be deemed an insured under the F & M policy and, therefore, F & M was prohibited from asserting a subrogation claim against the estate.

The circuit court granted the estate's motion for summary judgment, concluding that tenant/decedent Marcus Allen had an interest in the F & M insurance policy because a portion of his rental payments were allocated to "insurance" pursuant to the lease-to-own agreement. The circuit court did not rule that Marcus Allen was a named, additional, or definitional insured under the F & M policy.[5] Instead, the circuit

_____

[5] The estate's brief to this Court argues that Marcus Allen was an "equitable insured" under the F & M policy, stating, "it is important to note that [Respondent] acknowledged that Marcus Allen was not a named insured under the policy of insurance issued by Petitioner [F & M]. . . . As is evident from the Circuit Court's Order, it looked

(continued . . .)

court concluded that Marcus Allen was an "equitable insured." The circuit court's

September 2, 2014, order explains:

> As the Court views the facts presented in this case, F & M is not permitted to the equitable remedy of subrogation against Mr. Allen's Estate. As developed during discovery, Mr. Allen had agreed to purchase the insured premises located at 175 Keys Street. The contract between Mr. Allen and Ms. O'Connor required that Mr. Allen pay to Ms. O'Connor $625 every month. From these monthly payments, it was agreed that "$555.00 will go for mortgage, insurance and taxes." Ms. O'Connor testified that pursuant to the contract, she did purchase insurance with Mr. Allen's monthly payments. The insurance that she purchased was the policy provided by F & M. The Court finds that there is nothing equitable about allowing F & M, based upon a policy purchased with Mr. Allen's money, to pursue a subrogation claim against Mr. Allen's Estate to repay it for the loss covered under the F & M policy. . . .
>
> F & M has paid a debt to Ms. O'Connor for the policy covering the property in question. F & M's right to subrogation is to the extent that Ms. O'Connor, as its named insured, has a right to assert a claim against Mr. Allen for the loss. However, this produces a result that is not equitable. The Court finds that F & M wants to step into the shoes of Ms. O'Connor and seek repayment from Mr. Allen under a policy of insurance that Mr. Allen paid for. Consequently, based upon equitable principles, the Court finds that there is no genuine issue of fact to argue that F & M has a right to subrogation in this case against a person that funded the F & M policy.

beyond the mere named insureds and/or definitional insureds identified by the policy to consider whether any other interests existed in the subject property. . . . Under such circumstances, equitable principles dictate that Petitioner [F & M] has no right to subrogation in this case."

Following entry of the circuit court's order, F & M filed the present appeal.

## II.

## STANDARD OF REVIEW

F & M appeals the circuit court's order granting summary judgment in favor of the estate. We have held that "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syllabus Point 3, *Aetna Cas. & Sur. Co. v. Fed. Ins. Co.*, 148 W.Va. 160, 133 S.E.2d 770 (1963). We afford a plenary review to a lower court's order awarding summary judgment: "A circuit court's entry of summary judgment is reviewed *de novo*." Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

## ANALYSIS

The issue is whether F & M may maintain a subrogation action against the tenant/decedent's estate. We begin our analysis with a brief discussion of subrogation which has been defined by a leading insurance law treatise as follows:

> "Subrogation" is the substitution of another person in place of the creditor to whose rights he or she succeeds in relation to the debt, and gives to the substitute all the rights, priorities, remedies, liens, and securities of the person for whom he or she is substituted. . . . In other words, a subrogated insurer stands in the shoes of an insured, and has no greater rights than the insured, for one cannot acquire by subrogation what another, whose rights he or she claims, did not have.

8

. . .

> Accordingly, on paying a loss, an insurer is subrogated in a corresponding amount to the insured's right of action against any other person responsible for the loss, such that the insurer is entitled to bring an action against this third party whose negligent or other tortious or wrongful conduct caused the loss, regardless of whether the insurer would have been entitled to bring such an action in its own right.

Steven Plitt *et al.*, 16 *Couch on Insurance 3d* § 222:5 (2015) (footnotes omitted).

Our Court has recognized that "[t]he doctrine of subrogation is that one who has the right to pay, and does pay, a debt which ought to have been paid by another is entitled to exercise all the remedies which the creditor possessed against that other." Syllabus Point 1, *Bassett v. Streight*, 78 W.Va. 262, 88 S.E. 848 (1916). Further, "[s]ubrogation is applicable where a relationship of principal and surety or a relationship of primary and secondary liability exists, and the surety or the person with secondary liability has discharged the debt of the other pursuant to some legal liability." *Ray v. Donohew*, 177 W.Va. 441, 449, 352 S.E.2d 729, 737 (1986). We have recognized that subrogation is a derivative right founded upon principles of justice and equity. *See Fuller v. Stonewall Cas. Co. of W.Va.,* 172 W.Va. 193, 304 S.E.2d 347 (1983). This Court has also held that "[n]o right of subrogation can arise in favor of an insurer *against its own insured*, since by definition subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." Syllabus Point 2, *Richards v. Allstate Ins. Co.*, 193 W.Va. 244, 455 S.E.2d 803 (1995) (emphasis added).

9

The essential question in this case is whether tenant/decedent Marcus Allen was an "insured" under the F & M homeowner's policy. F & M contends that the circuit court's award of summary judgment to the estate was improper because tenant/decedent Marcus Allen was not a named or definitional insured under the F & M policy, nor was the lease-to-own agreement he entered into with Shelly O'Connor an insurance contract. Further, F & M asserts that Marcus Allen had his own renter's insurance through State Auto which included liability coverage; that the lease-to-own agreement stated Marcus Allen would be solely responsible for any damage he caused to the property; and that Marcus Allen's negligence caused the fire and damage to the property. Finally, F & M asserts that "although couched in terms of F & M versus the estate, in reality the case is F & M versus State Auto." Under these facts, F & M argues, the circuit court erred by ruling that Marcus Allen was an "equitable insured" under the F & M policy.

By contrast, the estate contends that the circuit court correctly determined that Marcus Allen was an "equitable insured" under the F & M policy because Shelly O'Connor purchased the F & M policy for Marcus Allen, with a portion of Marcus Allen's rent/monthly payments. The estate asserts that it is of no moment that Marcus Allen purchased renter's insurance from State Auto. Rather, the estate claims the only insurance policy of importance is the F & M policy, under which Marcus Allen should be considered an "equitable insured."

After review, we agree with F & M and find that Marcus Allen was not an "insured" under the F & M homeowner's policy. Thus, we conclude that F & M may maintain a subrogation action against Marcus Allen's estate.

The circuit court's ruling was based on its finding that Marcus Allen was an "equitable insured" under the F & M policy. Importantly, the circuit court did not conclude, nor is it asserted by the estate on appeal, that Marcus Allen was a named or definitional insured under the F & M policy. This Court has previously recognized that an insurance policy is a contract between the insurer and the insured *named in the policy*. In *Mazon v. Camden Fire Ins. Ass'n*, 182 W.Va. 532, 389 S.E.2d 743 (1990), the Court stated:

> An insurance policy and all rights arising from the policy are controlled by principles of contract, rather than property law.
>
> . . . .
>
> **It is well-established that a contract of insurance is a personal contract between the insurer and the insured named in the policy**. It is also axiomatic that an insurance policy is a contract of indemnity which pertains to the parties to the contract as opposed to the property being insured. **Accordingly an individual who is not a party to the insurance contract cannot maintain a suit on the policy**.

*Id*. at 533, 389 S.E.2d at 745 (internal citation omitted, emphasis added).

Further, this Court has held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syllabus Point

11

1, *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 815-16, 172 S.E.2d 714, 715 (1970).

The Court explained the reasoning for its holding in *Keffer* as follows:

> The question of construction of a contract of insurance, as of the construction of contracts generally, can arise only when the language of the contract is in need of construction. If the language employed is unambiguous and clear, there is no occasion for construction. Stated differently, resort to general rules for the construction of an insurance policy is unnecessary where the contract is unambiguous and its meaning is clear. The court is bound to adhere to the insurance contract as the authentic expression of the intention of the parties, and it must be enforced as made where its language is plain and certain. This means that **the terms of an unambiguous insurance policy cannot be enlarged or diminished by judicial construction, since the court cannot make a new contract for the parties where they themselves have employed express and unambiguous words**.

*Id.* at 516, 172 S.E.2d at 715 (emphasis added).

Based on *Mazon* and *Keffer*, it is clear that an insurance policy and all rights arising from the policy are controlled by principles of contract law. Further, an insurance policy is a contract between the insurer and the named and definitional insureds contained in the policy. If a contract unambiguously identifies the insureds, then a court may not, by judicial construction, enlarge the coverage to include other individuals foreign to the insurer.

In the present case, the F & M policy clearly and unambiguously states that the insurance contract is between F & M and Shelly O'Connor and Michael O'Connor. The circuit court failed to apply this clear, unambiguous language. Instead, the circuit court subjected the F & M policy to its own judicial construction and interpretation in

12

ruling that the tenant/decedent, a person who was not a named or definitional insured under the insurance contract, was an "equitable insured" of the F & M policy. This ruling altered the clear, unambiguous provisions of the F & M policy by adding an additional insured to the insurance contract. Under Syllabus Point 1 of *Keffer*, the circuit court erred by enlarging the terms of the F & M policy instead of giving full effect to the policy's clear and unambiguous language.

Further, this Court has never held that a person who is not a named or definitional insured of an insurance policy may be considered an "equitable insured." We decline to adopt the circuit court's ruling that the tenant/decedent was an "equitable insured" of the F & M policy for the following reasons. First, under the circuit court's ruling, F & M became responsible for insuring Marcus Allen, a tenant it had never agreed to insure or was even aware had moved into the subject property. This ruling is patently unfair to F & M because F & M has a right to choose whom it will or will not insure. Under the circuit court's ruling, F & M was not given the opportunity to assess the risk of insuring the tenant/decedent before deciding whether to offer him an insurance contract. As one legal insurance treatise addressing whether a tenant should be considered a co-insured of a landlord's insurance policy noted, "[t]he insurer has a right to choose whom

13

it will insure[.]" 6A J.A. Appleman & J. Appleman, *Insurance Law and Practice* § 4055, pp. 138-39 (Cum. Supp. 2014).[6]

Additionally, adopting the "equitable insured" ruling could make every homeowner's insurance policy purchased by a landlord subject to side agreements between the named insured (landlords) and third parties (tenants) who, though not named in the policy or known to the insurer, could allege that they had an "equitable" right to be

---

[6]Some courts outside of our jurisdiction have ruled that absent an express agreement in the lease to the contrary, a landlord and tenant are considered to be co-insureds under a landlord's fire-insurance policy. *See Sutton v. Jondahl*, 532 P.2d 478 (Okla.Ct.App.1975). We conclude that *Mazon* and *Keffer* compel us not to follow the rule announced in *Sutton*. In *Mazon* and *Keffer*, this Court established that (1) an insurance policy is a contract between the insurer and the named insured, and (2) full effect will be given to the provisions of an insurance policy that are clear and unambiguous. Under the *Sutton* rule, a court is not required to give full effect to an insurance policy that is clear and unambiguous. Rather, *Sutton* states that a court should enlarge the terms of an insurance policy by presuming a tenant, who is not named in the landlord's insurance contract, is covered under the landlord's policy unless there is an express agreement between the landlord and tenant to the contrary.

While followed in some jurisdictions, the *Sutton* rule has been rejected by a number of courts. For instance, in *Fire Insurance Exchange v. Geekie*, 179 Ill.App.3d 679, 534 N.E.2d 1061 (1989), the court found that traditional landlord-tenant law holds the tenant responsible for his negligent acts. Although the tenant has a contractual right to shift the burden, in the absence of such a contractual provision, the court would not indulge in the legal fiction of creating such a provision. 179 Ill.App.3d at 682, 534 N.E.2d at 1062. The court allowed the landlord's insurer to seek subrogation against the tenant, stating that "it satisfies equitable concerns by placing the burden of the loss where it ought to be - on the negligent party." *Id.; see also Zoppi v. Traurig*, 251 N.J.Super 283, 598 A.2d 19 (1990) (if landlord has claim against tenant, the existence of insurance should not exculpate tenant from his negligent conduct, absent an agreement).

14

covered under such a policy. This would create uncertainty as to who was covered under a particular policy and could lead to extensive, costly litigation.

Next, we find that under the circuit court's "equitable insured" ruling, the tenant/decedent's insurance company, State Auto, would receive a windfall. In essence, the issue in this case is whether F & M can seek subrogation against the tenant/decedent's insurance company, State Auto. State Auto entered into an insurance contract with the tenant/decedent, providing him with personal liability coverage in the amount of $100,000.00 per occurrence. F & M did not enter into an insurance contract with the tenant/decedent, nor was it given the opportunity to assess the risk associated with the tenant/decedent and decide whether it would offer him any coverage. Yet, under the circuit court's ruling, the insurance company that agreed to insure the tenant/decedent's personal liability, State Auto, avoids responsibility for damage caused to the subject property by the tenant/decedent's alleged negligence. We find that such a ruling is inequitable and would result in a windfall to State Auto at the expense of F & M, who never agreed to insure the tenant/decedent.

Finally, we reject the circuit court's "equitable insured" ruling based on our recognition of the following principle of law: "the fact both parties [landlord and tenant] had insurable interests does not make them co-insureds." Appleman, *Insurance Law and Practice* § 4055, at 138-39. An insurable interest, as it relates to property, has been defined as "any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary

15

damage or impairment." W.Va. Code § 33-6-3(b) [1957]. Our Court addressed this issue

in *Mazon*, stating,

> A person who is not either a party to the insurance contract or one for whose benefit it was written is not entitled to a share of the insurance proceeds by the mere fact they have an insurable interest in property. . . . [Those who are not the named insured] must establish [that] the named insured intended to cover an interest other than her own insurable interest. . . . The mere fact a co-owner insures the entire property does not preponderate to establish he is acting for another co-owner.

182 W.Va. at 534, 389 S.E.2d at 745 (quoting *Hartford Ins. Co. v. Stablier*, 476 So.2d

464 (La. App.1985)).[7]

---

[7]This quote from *Mazon* comes from a Louisiana case in which the court determined that one sister, who co-owned a piece of real estate along with her three sisters, procured insurance on the property for her own benefit, rather than for the benefit of her other sisters/co-owners. The court's discussion of an insurance contract extending to one "for whose benefit it [the insurance policy] was written" was in the context of whether an insurance policy purchased by one co-owner of property extends to cover the other co-owners of the property. In the present case, the tenant/decedent was not a co-owner of the subject property. Rather, the tenant/decedent agreed to a lease-to-own agreement under which he would have been evicted from the property if he failed to make a monthly payment on-time or if he caused damage to the property.

Further evidence that the F & M policy was not obtained for the tenant/decedent's benefit can be seen in the language of the lease-to-own agreement. The agreement states that the tenant/decedent was "solely responsible" for any damage he caused to the subject property, and that he would be evicted for causing damage to the property. The Supreme Court of Vermont, faced with a similar factual scenario, held: "The lease here, in express and unqualified language, obligates tenants to pay for the damage caused by their negligence. . . . [W]e find nothing in the language of the lease that would reasonably lead tenants to imply a contrary intent." *Travelers Indemnity Co. of America v. Deguise*, 180 Vt. 214, 219, 914 A.2d 499, 502 (2006). Because the lease obligated the tenants to pay for the damage caused by their own negligence, the Supreme

(continued . . .)

16

Courts outside of our jurisdiction examining this issue have agreed with Appleman's conclusion that "the fact that two parties have insurable interests does not make them co-insureds." For instance, in *Rausch v. Allstate Ins. Co.*, 388 Md. 690, 714, 882 A.2d 801, 815 (2005), the court held:

> The notion that, barring some express provision to the contrary, landlords and tenants are, as a matter of law, to be treated as co-insureds under the landlord's policy has no valid foundation. The supposed basis for that conclusion is that the tenant has an insurable interest in continued possession of the leased premises, and that may be so, but it does not make the tenant a co-insured.

Similarly, in *Neubauer v. Hostetter*, 485 N.W.2d 87, 90 (Iowa 1992), the Supreme Court of Iowa refused to accept that "fire insurance on an entire dwelling includes the interest of both landlord and tenant as a matter of law." That argument, it said, "disregards the fact that these are separate estates capable of being separately valued

---

Court of Vermont concluded that the tenants were not co-insureds under the landlord's fire insurance policy. *Id.*, 180 Vt. at 220, 914 A.2d at 503. The same logic applies to the present case—there is simply nothing contained in the lease-to-own agreement which suggests that the tenant/decedent would be covered under the landlord's insurance policy for damage he caused to the subject property. To the contrary, the plain language of the agreement states that the tenant/decedent would be evicted from the premises and held "solely responsible" for causing damage to the property.

Moreover, the F & M policy was a renewal policy that Shelly O'Connor first obtained in 2006, years before she entered into the lease-to-own agreement with the tenant/decedent. We also note that the tenant's estate did not make a claim under the F & M policy after the fire occurred, despite its present assertion that the F & M policy was written for the tenant/decedent's benefit. Based on these facts, we conclude that the F & M policy was not written for the tenant/decedent's benefit.

17

and separately insured." *Id.* After reviewing our case law, the Appleman treatise on insurance law, and cases from other jurisdictions, we hold that a tenant who is neither a named nor definitional insured of a landlord's homeowner's insurance policy is not an insured under the landlord's policy by the mere fact that the tenant may have an insurable interest in the leased property.

## IV.

## CONCLUSION

We find that F & M may maintain a subrogation action against the estate. The circuit court's September 2, 2014, order, ruling that Marcus Allen was an "equitable insured" under the F & M policy, is reversed.

Reversed.