**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia ex rel.**
**State Auto Property Insurance**
**Companies d/b/a State Auto Property**
**and Casualty Insurance Company, an Ohio**
**Company,**
**Petitioner**

**FILED**

**June 14, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 15-1178** (Kanawha County 11-C-606)

**The Honorable James C. Stucky, Judge of**
**the Circuit Court of Kanawha County, West**
**Virginia and CMD Plus, Inc., a West Virginia**
**Corporation,**
**Respondents**

**MEMORANDUM DECISION**

Petitioner, and third-party defendant in the underlying action, State Auto Property and Casualty Insurance Company ("State Auto"), by counsel Trevor K. Taylor, seeks a writ prohibiting enforcement of the November 10, 2015, order of the Circuit Court of Kanawha County that denied State Auto's renewed motion pursuant to West Virginia Rule of Civil Procedure Rule 12(b)(6) to dismiss the third-party complaint of the respondent herein and third-party plaintiff below, CMD Plus, Inc. ("CMD"), in which CMD asserts causes of action for breach of contract, common law bad faith, and statutory bad faith.

Upon a thorough review of the record, the arguments of counsel and applicable precedent, we conclude that the circuit court properly denied State Auto's motion to dismiss. Consequently, we deny the requested writ. This case does not present a new or significant question of law and we find no clear error. For these reasons, a memorandum decision denying State Auto's petition for a writ of prohibition is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

## I. FACTUAL AND PROCEDURAL HISTORY

In CMD's third-party complaint below, it alleges that prior to March 9, 2009, CMD entered into a contractual agreement with the co-defendants below, C.K. Shah and Kimberly S. Shah, in which CMD agreed to construct a home on property owned by the

1

Shahs in Kanawha County, West Virginia. Thereafter, Barry G. Evans and Ann M. Evans, who owned property adjacent to the Shahs' property, filed a complaint against CMD and the Shahs alleging that the construction activity on the Shah property caused surface water, storm water, mud, and debris to escape the Shah property and enter the Evans property. CMD subsequently moved, pursuant to West Virginia Rule of Civil Procedure 14(a), to file a third-party complaint against its insurer, State Auto, and the circuit court granted the motion.

In its third-party complaint, CMD alleged causes of action against State Auto for common law bad faith, violations of the West Virginia Unfair Trade Practices Act, W. Va. Code §§ 33-11-1 to 33-11-10, and breach of contract. According to CMD, it maintained a policy of commercial general liability with State Auto for which it had paid all premiums. CMD asserted that State Auto did not properly handle CMD's requests to take action regarding the Evanses' alleged property damage and, as a result, the Evanses filed their complaint against CMD and the Shahs for the alleged property damage to their property.

State Auto filed a motion to dismiss CMD's third-party complaint which was denied by the circuit court by order dated September 25, 2012.[1] On August 13, 2015, State Auto filed a renewed Rule 12(b)(6) motion to dismiss CMD's third-party complaint. In its renewed motion, State Auto asserted that subsequent to the denial of its previous motion to dismiss, State Auto filed a declaratory judgment action which ultimately resulted in an agreement between State Auto and CMD as to all coverage issues. State Auto asserted that as part of this agreement, it was ordered to pay CMD's counsel's attorney fees in the amount of $52,757.54. According to State Auto, the agreement resolved all of the Evanses' claims and completely released CMD from any and all liability relating to the allegations contained in the Evanses' complaint for past, present, and future damages.

By order dated November 10, 2015, the circuit court denied State Auto's renewed motion to dismiss CMD's third-party complaint. Thereafter, State Auto filed a petition with this Court seeking a writ of prohibition to prevent enforcement of the circuit's court's order denying its renewed motion to dismiss.

## II. ANALYSIS

When a party comes before this Court seeking a writ of prohibition on the basis that the lower court exceeded its legitimate powers, we are guided by our holding in

---

[1] State Auto indicates that its motion to dismiss Erie's third-party complaint was denied "except that the Court dismissed all such claims that, in actuality, are claims of the Plaintiffs, Barry G. Evans and Ann M. Evans."

2

syllabus point 4 of *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996), which provides:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

At the outset, we note that State Auto's motion below was a renewed motion to dismiss pursuant to Rule 12(b)(6). Nevertheless, State Auto presented in its motion matters outside the pleadings. Under our law, "[o]nly matters contained in the pleading can be considered on a motion to dismiss under Rule 12(b) R. C. P., and if matters outside the pleading are presented to the court and are not excluded by it, the motion should be treated as one for summary judgment[.]" Syl. pt. 4, in part, *U.S. Fidelity & Guar. Co. v. Eades*, 150 W. Va. 238, 144 S.E.2d 703 (1965), *overruled on other grounds by Sprouse v. Clay Communication, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975). In its order denying State Auto's motion to dismiss, the circuit court considered only matters contained in CMD's third-party complaint, and treated State Auto's motion as a motion to dismiss. The circuit court specifically noted in its order that "[t]he pleadings which form the basis for review for the Court are the same pleadings which resulted in the prior denial of State Auto's initial Motion." "This Court will not pass on a nonjurisdictional question which has not been decided by the trial court in the first instance." Syl. pt. 2, *Sands v. Sec. Trust Co.*, 143 W. Va. 522, 102 S.E.2d 733 (1958). Therefore, in reviewing the circuit court's order, this Court will consider only those matters contained in CMD's third-party complaint as did the circuit court.

Regarding motions to dismiss under Rule 12(b)(6), this Court has indicated that "[t]he purpose of a motion under Rule 12(b)(6) of the *West Virginia Rules of Civil*

3

*Procedure* is to test the sufficiency of the complaint." *Cantley v. Lincoln Cty. Comm'n*, 221 W. Va. 468, 470, 655 S.E.2d 490, 492 (2007). We also are mindful that

> [a]ll that the pleader is required to do is to set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist. The trial court should not dismiss a complaint merely because it doubts that the plaintiff will prevail in the action, and whether the plaintiff can prevail is a matter properly determined on the basis of proof and not merely on the pleadings. Wright & Miller, *Federal Practice and Procedure*: Civil § 1216 (1969).
>
> In view of the liberal policy of the rules of pleading with regard to the construction of plaintiff's complaint, and in view of the policy of the rules favoring the determination of actions on the merits, the motion to dismiss for failure to state a claim should be viewed with disfavor and rarely granted. The standard which plaintiff must meet to overcome a Rule 12(b)(6) motion is a liberal standard, and few complaints fail to meet it. The plaintiff's burden in resisting a motion to dismiss is a relatively light one. *Williams v. Wheeling Steel Corp.*, 266 F.Supp. 651 (N.D. W. Va. 1967).

*Lodge Dist. Co. v. Texaco, Inc.*, 161 W. Va. 603, 605-06, 245 S.E.2d 157, 159 (1978). We further have held that "[t]he trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)." Syl. pt. 3, *Chapman v. Kane Transfer Co.*, 160 W. Va. 530, 236 S.E.2d 207 (1977). With these standards in mind, we proceed to consider the issues before us.

### A. CMD's Common Law Bad Faith Claim

State Auto first asserts that CMD's claim for common law bad faith must fail as a matter of law. According to State Auto, CMD's third-party complaint against it constitutes a third-party bad faith claim which has been abolished in this State.[2] This Court has explained:

---

[2] Neither common law nor statutory third-party bad faith claims now exist in this State. This Court held in the syllabus of *Elmore v. State Farm Mutual Automobile*

(continued . . .)

> The terms "first-party" and "third-party" have distinctively different meanings in the context of bad faith settlement actions against insurers. For definitional purposes, a first-party bad faith action is one wherein the insured sues his/her own insurer for failing to use good faith in settling a claim brought against the insured or a claim filed by the insured. A third-party bad faith action is one that is brought against an insurer by a plaintiff who prevailed in a separate action against an insured tortfeasor.

*State ex rel. Allstate Ins. v. Gaughan*, 203 W. Va. 358, 369, 508 S.E.2d 75, 86 (1998) (footnotes omitted). CMD's third-party complaint against State Auto is a first-party bad faith action because CMD is suing its own insurer, State Auto, for failing to use good faith in settling a claim brought against CMD by the Evanses.

This Court has recognized two types of first-party bad faith claims:

> One such action may arise when the insurer fails to use good faith in settling a claim by someone the insured harmed or injured. . . . However, the second type of first-party bad faith action against an insurer concerns a claim brought by the insured against the insurer, e.g., house burned down.

*Id.* at 370 n.17, 508 S.E.2d at 87 n.17. CMD's claim falls under the first of the two types of first-party bad faith actions. In its third-party complaint against State Auto, CMD alleged, *inter alia*, "[a]s a result of State Auto not properly handling CMD's claim, the Plaintiffs filed their Complaint against CMD and the Shahs for the alleged property damage to the Evans property." This states a first-party common law bad faith claim under our law in that CMD alleged that its insurer, State Auto, failed to use good faith in settling a claim by someone the insured allegedly harmed or injured.

State Auto further asserts that CMD's bad faith claim against State Auto must fail because CMD did not allege in its third-party complaint that the Evanses' action against CMD resulted in an excess judgment against CMD. This Court has explained that claims falling under the first type above "often arise after a third-party claimant obtains a

---

*Insurance Company*, 202 W. Va. 430, 504 S.E.2d 893 (1998), that "[a] third party has no cause of action against an insurance carrier for common law breach of the implied covenant of good faith and fair dealing or for common law breach of fiduciary duty." Statutory third-party bad faith claims were abolished by the Legislature in W. Va. Code § 33-11-4a (2005).

judgment in excess of policy limits and the insured later sues the insurance company for failure to settle within policy limits." *State ex rel. Brison v. Kaufman*, 213 W. Va. 624, 635, 584 S.E.2d 480, 491 (2003) (Davis, J., concurring) (quoting *Palmer v. Farmers Ins. Exch.*, 861 P.2d 895, 905 (Mont. 1993)). While this Court has acknowledged that common law bad faith claims falling under the first type above may or often arise where there is an excess judgment against the insured, we have not held that such claims can only arise where there has been an excess judgment.

Therefore, we find that CMD met its burden in setting forth a sufficient first-party bad faith claim against State Auto.[3]

## B. *CMD's Statutory Bad Faith Claim*

In Count II of its third-party complaint, CMD alleges violations of the West Virginia Unfair Trade Practices Act. *See* W. Va. Code § 33-11-4(9) (2002). Specifically, CMD asserts that State Auto violated W. Va. Code § 33-11-4(9)(b), (f), and (g), which provide:

> No person shall commit or perform with such frequency as to indicate a general business practice any of the following :
> . . . .
>
> (b)   Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> . . . .
>
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering

---

[3]State Auto also argues that the insurance policy at issue does not provide coverage to property damages incurred by CMD and the Shahs. However, this Court does not read CMD's third-party complaint as asserting such a claim. Instead, as noted above, we believe that the third-party complaint alleges that State Auto failed to use good faith in settling a claim of the Evanses whom CMD allegedly harmed or injured. Moreover, State Auto puts forth several arguments based on evidence adduced below. However, this evidence is not pertinent to evaluating the sufficiency of a complaint pursuant to Rule 12(b)(6).

substantially less than the amount ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[.]

This Court has previously recognized that "[a]n implied private cause of action may exist for a violation by an insurance company of the unfair settlement practice provisions of W. Va. Code, 33-11-4(9)." Syl. pt. 2, in part, *Jenkins v. J.C. Penney Cas. Ins. Co.*, 167 W. Va. 597, 280 S.E.2d 252 (1981), *overruled on other grounds by State ex rel. State Farm Fire v. Madden*, 192 W. Va. 155, 451 S.E.2d 721 (1994). State Auto contends, however, that CMD has no standing to assert that State Auto violated statutory duties owed to the Evanses, and the Evanses have no action against State Auto because the Evanses are third-party claimants. State Auto's argument must fail.

State Auto is correct that the Evanses do not have a statutory bad faith claim against it pursuant to W. Va. Code § 33-11-4a (2005), which eliminates third-party statutory bad faith claims. However, as the insured under a liability insurance policy issued by State Auto, CMD is a first-party claimant and has a cause of action for State Auto's alleged violations of W. Va. Code § 33-11-4(9) in settling those claims that CMD becomes legally obligated to pay to the Evanses because of property damage suffered by the Evanses. Inasmuch as a private cause of action exists for violations of W. Va. Code § 33-11-4(9), and CMD alleged in its third-party complaint violations of W. Va. Code § 33-11-4(9), we find that CMD set forth sufficient information to outline the elements of a statutory bad faith claim.

State Auto's final argument with regard to CMD's bad faith claims is that these claims are barred by the one-year statute of limitation applicable to bad faith claims. Syl. pt. 4, *Noland v. Virginia Insurance Reciprocal,* 224 W. Va. 372, 686 S.E.2d 23 (2009) ("The one year statute of limitations contained in W. Va. Code § 55-2-12(c) (1959) (Repl. Vol. 2008) applies to a common law bad faith claim").[4] Essentially, State Auto argues that based on the facts in CMD's third-party complaint, State Auto's improper handling of its insurance claim began late in 2009 and was clearly known by CMD at least by May 2010, if not sooner. Therefore, State Auto contends that CMD's March 20, 2012, third-party complaint was filed outside of the one-year statute of limitation. CMD responds that its bad faith causes of action are timely because State Auto's bad faith handling of the claim continued until CMD's third-party complaint was filed.

Under our law, "[i]n the great majority of cases, the issue of whether a claim is barred by the statute of limitations is a question of fact for the jury." *Gaither v. City*

---

[4] State Auto argued the statute of limitation issue in its brief below, but the circuit court did not address the issue in its order denying State Auto's motion to dismiss.

*Hosp., Inc.*, 199 W. Va. 706, 714–15, 487 S.E.2d 901, 909–10 (1997). Consequently, the question is proper for the court only "[w]here there are undisputed facts from which only one conclusion may be drawn[.]" *Carey v. Kerr-McGee Chem. Corp.*, 999 F. Supp. 1109, 1115 (N.D. Ill. 1998). This Court's examination of the pleadings indicates that this is not the type of case from which only one conclusion may be drawn regarding the timeliness of CMD's bad faith claims. For this reason, we find no merit to State Auto's timeliness argument.

For the reasons set forth above, we find that the circuit court did not clearly err in denying State Auto's renewed motion to dismiss CMD's common law and statutory bad faith claims pursuant to Rule 12(b)(6).

### C. CMD's Breach of Contract Claim Against State Auto

The last cause of action alleged by CMD in its third-party complaint is that State Auto breached the insurance policy by failing to satisfy all legitimate claims made against CMD which were covered under the insurance policy. This Court has indicated that "an insurance policy and all rights arising from the policy are controlled by principles of contract law." *Farmers & Mechs. Mut. Ins. Co. v. Allen*, 236 W. Va. 269, ___, 778 S.E.2d 718, 724 (2015). Moreover, a complaint that asserts the existence of a contract and a breach thereof with damages is sufficient to survive a motion to dismiss. *See Harper v. Bus Lines*, 117 W. Va. 228, 185 S.E.2d 225 (1936). By alleging that State Auto has failed to fulfill its duties under the subject insurance policy, CMD has sufficiently pled a breach of contract claim. Therefore, we find that the circuit court did not err in denying State Auto's Rule 12(b)(6) motion to dismiss CMD's claim for breach of contract.

### III. CONCLUSION

When we apply the factors in *Hoover* to the facts of this case, we find that State Auto has failed to prove the existence of any of the factors. First, State Auto has other adequate means to obtain the desired relief. For example, State Auto could file a motion for summary judgment after the completion of discovery in order to obtain relief. Second, this Court is unable to find that in the absence of granting the writ sought, State Auto will be damaged or prejudiced in a way that is not correctable on appeal because there has not yet been a judgment against State Auto arising from CMD's third-party complaint. Third, and most importantly, the circuit court's order denying State Auto's renewed Rule 12(b)(6) motion to dismiss CMD's third-party complaint does not constitute clear error. Fourth, State Auto does not allege that the circuit court's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law. Finally, the circuit court's order does not raise new and important problems or issues of law of first impression. For these reasons, this Court denies the writ of prohibition sought by State Auto.

**ISSUED:** **June 14, 2016**

**CONCURRED IN BY:**

Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman

**DISSENTING:**

Chief Justice Menis E. Ketchum
Justice Allen H. Loughry II

Chief Justice Ketchum, dissenting:

Respondent CMD Plus, Inc. ("CMD"), is in the business of residential construction. CMD purchased a commercial general liability policy (with $1 million in coverage) from the petitioner, State Auto Property and Casualty Company ("State Auto").

C.K. and Kimberly S. Shah ("the Shahs") own a tract of land. The Shahs hired CMD to build a custom home on the tract. The Shahs' tract is a steep hillside that slopes down to an adjoining residence owned by Barry G. and Ann M. Evans ("the Evanses"). Beginning around March 9, 2009, allegedly because of CMD's negligent construction techniques, the hillside began to slide toward the Evanses' residence causing property damage. In April 2011, the Evanses sued CMD; State Auto settled this suit against its insured, CMD, in August 2015. Additionally, the slide damaged a sewer line owned by the Charleston Sanitary Board; State Auto paid the Board to relocate the line and settled this claim against its insured, CMD.

On March 20, 2012, CMD filed a third-party complaint against State Auto. The complaint asserted three causes of action: (1) that State Auto acted in bad faith in its handling of the insurance policy, and was liable for CMD's net economic losses, attorney's fees, annoyance and inconvenience, mental anguish, and emotional distress under *Hayseeds, Inc. v. State Farm Fire & Cas.*, 177 W.Va. 323, 352 S.E.2d 73 (1986); (2) that State Auto had breached its liability insurance contract with CMD; and (3) that

9

State Auto violated the West Virginia Unfair Trade Practice Act by failing to attempt a good faith settlement of the Evanses' claims.

CMD's first and second counts allege its insurer, State Auto, breached the contractual duty of good faith by acting in "bad faith" in the way it handled CMD's defense. The counts are not separate and unique, and the damages recoverable for "bad faith" and "breach of an insurance contract" overlap. See *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, 587, 746 S.E.2d 568, 578 (2013) (this Court "has declined to recognize an independent claim for a breach of the common law duty of good faith and has instead held that such a claim sounds in breach of contract."); *Highmark W.Va., Inc. v. Jamie*, 221 W.Va. 487, 492, 655 S.E.2d 509, 514 (2007) (the breach of "an implied covenant of good faith and fair dealing does not provide a cause of action apart from a breach of contract claim.").

Our law allows only two types of first-party bad faith claims, that is, where an insured (like CMD) sues its insurer (like State Auto):

> First, the first-party bad faith action may arise when an insurer fails to use good faith in resolving a "loss claim" filed by the insured. The second type of first-party bad faith action may arise as a result of the insurer's failure to use good faith in settling a lawsuit by a third-party the insured harmed, resulting in an "excess judgment" against the insured.

*State ex rel. Brison v. Kaufman*, 213 W.Va. 624, 634, 584 S.E.2d 480, 490 (2003) (Davis, J., concurring).

In the instant case, CMD's lawsuit against State Auto does not involve a "loss claim" filed by the insured. The liability policy at issue explicitly excludes coverage for damage to property owned by CMD and the Shahs. The only parties who could file a claim against the State Auto policy for losses were the Evanses and the Charleston Sanitary Board, who actually sustained property damage and who were subsequently paid in settlements by State Auto. Further, because State Auto settled all of the claims by the Evanses and by the Charleston Sanitary Board, there is no "excess judgment" against CMD.

Put simply, under *Brison*, CMD has failed to assert a cause of action for first-party bad faith or breach of the contractual duty of good faith. I would therefore have granted the writ of prohibition as to these two claims.

CMD's third and final count alleges that its insurer, State Auto, engaged in unfair claim settlement practices and thereby violated three subsections of the UTPA. CMD alleges that State Auto, as a general business practice, failed to act reasonably promptly on CMD's claim for coverage; failed to effectuate a prompt, fair, and equitable settlement

10

of either the Evanses' claim or CMD's claim; and forced the Evanses and CMD to institute litigation to obtain coverage due under State Auto's commercial general liability policy. Specifically, CMD alleges violations of the following three subsections of the UTPA, W.Va. Code § 33-11-4(9):

> No person shall commit or perform with such frequency as to indicate a general business practice any of the following: . . .
>
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; . . .
>
> (f) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered; . . .

CMD has no standing to bring an action under these three subsections of the UTPA.

The first two subsections of W.Va. Code § 33-11-4(9) relied upon by CMD are subsection (9)(b) and subsection (9)(f). In the context of a liability insurance policy, subsections (9)(b) and (9)(f) are designed to protect plaintiffs who seek liability-related damages from an insured, and not designed to protect the insured.

Subsection (9)(b) pertains to "communications with respect to *claims*," and subsection (9)(f) pertains to "settlements of *claims* in which liability has become reasonably clear" (emphasis added). In the context of a liability insurance policy, the term "claim" is used "in its common (and common sense) usage: an effort by a third party to recover money from the insured." *Evanston Ins. Co. v. Sec. Assur. Co*., 715 F. Supp. 1405, 1412 (N.D. Ill. 1989) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Cont'l Illinois Corp.*, 673 F. Supp. 300, 307 n.17 (N.D. Ill. 1987). "'Claim' ordinarily means a demand on the insured for damages resulting from the insured's alleged negligent act or omission." *Safeco Title Ins. Co. v. Gannon*, 774 P.2d 30, 33 (Wash. App. 1989). "[A] claim must relate to an assertion of legally cognizable damage, and must be a type of demand that can be defended, settled and paid by the insurer." *Evanston Ins. Co. v. GAB Bus. Servs., Inc.*, 521 N.Y.S.2d 692, 695 (1987).

11

In the context of the commercial general liability insurance policy issued by State Auto to CMD, the "claims" at issue in subsections (9)(b) and (9)(f) are the demands upon CMD by Mr. and Mrs. Evans and by the Charleston Sanitary Board for compensation for the damages resulting from CMD's alleged negligent act or omission. Hence, to the extent State Auto failed to "act reasonably promptly upon communications with respect to claims," or failed to "effectuate prompt, fair and equitable settlements of claims," in this case, the UTPA protects only the efforts by Mr. and Mrs. Evans and the Charleston Sanitary Board to recover legally cognizable damages from CMD by way of State Auto's liability policy. As the insured protected by the liability policy, CMD could make no type of demand that could be defended, settled and paid by State Auto. Accordingly, CMD has no standing to assert a claim under subsection (9)(b) or subsection (9)(f) of W.Va. Code § 33-11-4.

The third subsection of W.Va. Code § 33-11-4 relied upon by CMD is subsection (9)(g). That subsection prohibits an insurer from "[c]ompelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered." W.Va. Code § 33-11-4(9)(g). This statute clearly has no application to a liability insurance policy.

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation." Syllabus Point 2, *State v. Elder*, 152 W.Va. 571, 165 S.E.2d 108 (1968). Under the typical liability policy, an insured is not entitled to any "amounts" under the policy, and an insured can make no "claims for amounts" that would later be "reasonably similar to the amounts ultimately recovered." Under the commercial general liability policy issued by State Auto, the insured (CMD) was entitled to two things: a defense against a liability claim from a third party, and indemnification of any damages (within policy limits) due to the third party as a result of CMD's alleged negligent act or omission. CMD cites us to no authority suggesting CMD had a right to "recover amounts due" under the State Auto policy. CMD therefore has no standing to assert to assert a claim under W.Va. Code § 33-11-4(9)(g).

I would therefore have also granted a writ of prohibition as to CMD's third, UTPA cause of action.

In summary, I believe that the circuit court's order was clearly erroneous as a matter of law. I would have granted the requested writ, and directed the circuit court to dismiss CMD's causes of action under the UTPA. I therefore strongly dissent.

12

LOUGHRY, Justice, dissenting:

      In affirming the trial court's decision to deny State Auto's motion to dismiss the third-party complaint of CMD, the majority has sanctioned what clearly amounts to the assertion of a third-party bad faith claim–an action that has been statutorily eliminated.[1] Through its third-party complaint filed against State Auto, CMD seeks to recover for the delays that transpired as the result of litigation that the Evanses filed against CMD. While at first glance it appears that CMD has asserted a first-party bad faith action against its own insurer (State Auto), upon analysis of the claim in terms of the commercial general liability ("CGL") coverage at issue, CMD has merely sought to disguise a third-party bad faith claim as a first-party claim to avoid the statutory proscription against such claims. Accordingly, I must dissent.

      Typically, a first-party bad faith claim presents when the insured sues his or her own insurer for failing to use good faith in settling a "loss claim" brought against the insured or a claim that was filed by the insured. *See State ex rel. Allstate Ins. Co. v. Gaughan*, 203 W.Va. 358, 369, 508 S.E.2d 76, 86 (1998). Alternatively, a first-party claim may occur when a lawsuit results in an excess judgment against the insured.[2] In this case, neither of those predicate scenarios exist. CMD has not filed a "loss claim" against State Auto and no lawsuit resulted in an excess judgment. What CMD–the insured–relies upon as the basis for its bad faith claim is the litigation-related delays pertaining to the investigating and settlement of the Evanses' claim. While those delays clearly impacted the repair of the subject property and therefore effected the Evanses, the delays did not result in any bad faith damages that are recoverable by CMD. Importantly, State Auto defended CMD throughout the underlying litigation under the terms of the controlling CGL policy and it fully indemnified CMD.

      The State Auto policy that CMD purchased provides coverage for damages that the insured is legally obligated to pay for "bodily injury" or "property damage" that CMD causes others and *not for losses that CMD sustains itself*. Because the CGL policy was not procured for the purpose of covering losses directly sustained by the insured, it stands to reason that there is no basis for a first-party bad faith claim. In a nutshell, CMD cannot assert a "loss claim" under its CGL policy from which a bad faith claim could flow. As a result, CMD is simply "borrowing" a claim that could only belong to the

[1]*See* W.Va. Code § 33-11-4a (a) (2011) (providing that third-party claimant may not bring private cause of actions for unfair claims settlement practice).

[2]*See State ex rel. Brison v. Kaufman*, 213 W.Va. 624, 634, 584 S.E.2d 480, 490 (2003) (Davis, J., concurring).

13

Evanses in an attempt to obtain relief for a purported claim of injury to itself. What the majority has unwittingly allowed by not granting the requested writ of prohibition is the effective sanctioning of a third-party bad faith claim–a claim that is statutorily prohibited.[3]

In stating that CMD has asserted a proper first-party bad faith claim upon which relief can be granted, the trial court failed to cite any authority. I submit that the trial court and the majority erred in analyzing the framework of bad faith law. CMD has wholly failed to plead a claim that is founded on State Auto's violation of its duty to act in good faith and deal fairly with its insured. *See Noland v. Virginia Ins. Reciprocal,* 224 W.Va. 372, 386, 686 S.E.2d 23, 27 (2009). Not only does CMD lack the predicate basis for asserting a first-party bad faith claim under its CGL policy, but it has failed to identify what damages it incurred as a result of the litigation-related delays.[4] As a result, CMD will necessarily receive a windfall if its bad faith claim is permitted to proceed and recovery ultimately ensues.

Because I firmly believe this state's bad faith jurisprudence has been tortured to create a non-existent first-party bad faith claim under the facts of this case,[5] I respectfully dissent.

---

[3]*See supra* note 1.

[4]State Auto fully paid CMD's attorney's fees in the amount of $52,757.54.

[5]I further believe that the one-year statute of limitations for filing a bad faith claim had expired by the time CMG filed its third-party complaint on March 20, 2012.

14